## McLaughlin's Appeal.

Argued October 6, 1942. Before Schaffer, C. J.; Drew, Linn, Stern, Patterson and Parker, JJ.

*Thomas E. Whitten,* for appellants.

*I. Edward Roth,* with him *Leo Kostman,* for appellee.

Per Curiam, October 23, 1942:

Now, October 23, 1942, the decree of the court of common pleas entered in the above entitled case is reversed and it is now determined and decreed that John T. Michaels received a higher number of votes than Michael Havrilla and is entitled to the office of council-

man from the second ward of the Borough of North Braddock. Costs to be paid by the Borough of North Braddock. The prothonotary will forthwith transmit to the Secretary of the Commonwealth and to the proper county board a certified copy of this decree. Opinion will be filed later.

OPINION BY MR. JUSTICE PARKER, November 23, 1942:

This appeal is from a decision of a court of common pleas in an election contest as that expression is used in §1711 et seq. of the Pennsylvania Election Code, Act of June 3, 1937, P. L. 1333 (25 PS 3291).

At an election held November 4, 1941, two councilmen were to be chosen by the electors of the second ward of the Borough of North Braddock, and the Democratic and Republican parties had each nominated two candidates. One candidate received the highest vote and his election is not disputed. Michael Havrilla, Democrat, and John T. Michaels, Republican, each claimed to have received the second highest vote and to be entitled to the office.

The returns of the election board showed that Michaels received 856 votes and Havrilla 850 votes. A petition was promptly presented to the court of common pleas for the opening of the ballot box and for a recount in the second precinct of the ward. On a recount the court rejected 88 ballots on the ground that they were marked so "as to be capable of identification" in violation of §1223 (a) of the code (25 PS 3063). The returns were corrected in accordance with the order of the court with the result that Havrilla was recorded as receiving 823 votes and John T. Michaels 795 votes. Within twenty days after the election in question 20 qualified electors of the ward presented a petition for an election contest. The ground alleged for the contest was that 88 ballots, containing foreign markings, had been incorrectly rejected as the markings were not on the ballots when deposited by the voters but were made by the election officers when counting the votes. The court in banc refused to quash the petition.

After hearing and the taking of testimony, the court below, consisting of one judge, relying on its interpretation of *McCaffreys' Appeals,* 337 Pa. 552, 11 A. 2d 893, dismissed the petition. We are all of the opinion that this was error and that it was due to a failure of the court below to distinguish between a proceeding under' §§1701-1703 of the election code (25 PS 3261-3263) and one under §1711 et seq. In *McCaffreys' Appeals* the ballot box was opened on petition to the court of common pleas and corrections were made. The election board revised its return accordingly and then an appeal was taken to the court from the decision of the board in changing its returns as it had been directed to do. That court thought it had jurisdiction by virtue of §1407 of the election code (25 PS 3157). We held that such an appeal would not lie saying that the statute limits the jurisdiction of the court, where the appeal is from an order or decision of the board regarding a recount or recanvass under §1701 et seq., to an inquiry as to whether the board, either fraudulently or mistakenly, has failed to correct its return in accordance with the decision of the court in the prior proceeding as required by §1703. We were there dealing solely with the scope of an appeal under §1407, while here we have an election contest under a different section.

Article XVII of the present election code, just as the act which it replaced, deals with two matters, (1) the computation and certification of votes as returned and (2) an election contest after the computation of the returns has been made: cf. *Twenty-eighth Congressional Dist. Nom.,* 268 Pa. 313, 318, 112 A. 74. That article first provides in §§1701-1703 a short and expeditious remedy by an opening of the ballot box and a recount by a court of common pleas. The purpose is to ascertain whether fraud or substantial error has occurred in the computation of the votes or marking of the ballots in a particular precinct. It does not provide for a general investigation of all matters involving the election machinery. If the

earlier sections were so construed as to extend the court's jurisdiction over matters which do not directly relate to correcting fraudulent or erroneous returns, the subject matter dealt with, there would be no need for an election contest.

The legislature by §1711 provided a complete and comprehensive remedy in the form of a contest whereby all matters may be examined that affect the conduct of the election and the rights of the candidates at such election. Anticipating just such questions as are raised here, it was provided by paragraph (b) of §1703 (25 PS 3263) that "no order or decision of the court under the provision of sections 1701 and 1702 of this act, should be deemed a final adjudication regarding the results of any primary or election, so as to preclude *any* contest thereof under the provisions of this article." [Italics supplied.] We deem it clear that the contestants here were entitled to raise the question presented by their petition notwithstanding any prior action in the recount proceedings. It was not disputed that there were foreign markings on some of the ballots but petitioners alleged that they were placed there after the ballot box was opened by the election officers, a matter which involved the conduct of the election officers.

The court below, after holding that it was without jurisdiction, considered the case on its merits and held that the contestants had not in any event borne the burden of proof imposed upon them. A careful examination of the evidence and the findings of fact of the court below convinces us that the petitioners did sustain their burden.

The 88 ballots were rejected on the ground that when the ballot box was re-opened on the recount there were on them foreign pencil markings consisting of figures. It is provided by §1223 of the election code (25 PS 3063): "(a) No ballot which is so marked as to be capable of identification shall be counted. Any ballot that is marked in ink or by anything but pencil or indelible pencil shall

be void and not counted. Any ballot marked by any other mark than an (X) in the space provided for that purpose shall be void and not counted." The contestants, for the purpose of explaining the presence of the figures, called five witnesses, the entire election board, judge, majority and minority inspectors, and two clerks, three Democrats and two Republicans. No other testimony was offered by either side.

All five witnesses testified that when the ballots were taken from the ballot box the election officers made a count of the ballots to see that the total corresponded with the number of ballot stubs and in doing so spread out and examined the ballots. On two occasions the total number of ballots did not correspond with the ballot stubs but on the third count they found that they did. All five testified that they separated the ballots when they were taken from the box into three piles, straight Democratic, straight Republican, and splits, and in doing so they unfolded them, and that at that time and in recording the votes they inspected the ballots. They then said either that there were no marks on the ballots when taken from the box or that they did not see any marks. In the latter case each witness testified fully as to his opportunity to observe marks so that all of the testimony was more than negative. Not only so, but four of the witnesses, the inspectors and clerks, testified that as an aid to counting the ballots they, in ignorance of the law, placed the pencil numbers on the ballots after the judge of elections took them from the box. The judge of elections testified that he did not place any marks on the ballots and did not see the others do so. The witnesses were not respectively able to identify every number, but this is not surprising. It is a matter of universal knowledge that it is difficult and often impossible for a person to identify his own figures. They did give a reasonable explanation for the presence of foreign markings.

The learned judge below not only said that he was "impressed with the good faith and honesty of these elec-

tion officers" but that he was "satisfied that the violations of the law, which took place, were made ignorantly and without any intent to commit any fraud." We can only conclude that he believed the witnesses. He found as a fact that it was "clear that four members of this Election Board violated the election law in placing marks upon the ballots while they were in the process of being counted" in violation of §1222 (a) of the code (25 PS 3062). Losing sight of the fact that all five members, whose honesty was found by the trial judge, testified that the marks were not there when the ballots were taken from the box, that court concluded that merely because the parties could not identify the handwriting of all the figures contestants had not sustained their burden. We note in this connection the facts that the majority of the board were Democrats, that their testimony favored the Republican nominee, that it was unanimous, and that they were testifying against interest in admitting an unintentional violation of the law. The conclusion is irresistible that the marks complained of were placed on the ballots by the election officers.

It is manifest that when the legislature provided that no ballot so "marked as to be capable of identification shall be counted" it did not intend that every mark which might distinguish a ballot would necessarily result in its invalidity: *McCaffreys' Appeals,* supra, p. 559. It had reference to marks which would connect the identity of the voter and his ballot and was intended to promote secrecy in voting. It cannot be extended to include marks made by election officers after the ballot boxes are opened. When the findings of the court are viewed in the light of the evidence no other reasonable deduction can be made than that the marks which were found upon these ballots were placed there after the polls were closed and the ballot box was opened. Consequently, the 88 ballots should be counted and the first return of the election board sustained. The contestants sustained their burden by the unanimous testimony of the members of the bi-

partisan official board authorized to conduct the election. Voters cannot be disfranchised under the circumstances present here.

A decree was entered in this case on October 23, 1942.