## Koch Election Contest Case.

Submitted Jan. 2, 1945. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

Albert H. Heimbach, for appellant.

Frank X. York, for appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, March 19, 1945:

The question is whether the candidate receiving a majority of the votes cast at an election should be allowed to appeal *nunc pro tunc* from an erroneous computation by the county board of elections.

Appellant Koch and appellee Rehrig were opposing candidates in the general election of November 2, 1943, for the office of school director of the Borough of Lehighton. Koch received a majority of the votes. This fact was correctly indicated by return sheets posted outside the polling place in the second ward and by return and tally return sheets within the ballot box. However, a single tally sheet was improperly marked. Its total was accurate, but the tally strokes incorrectly registered a sufficient number of votes for *Rehrig,* apparently resulting in his election. This was clearly a clerical error. The computation board discovered the discrepancy, but failed to correct it. It likewise neglected to have the ballot box opened and the vote recounted as required. As a consequence, on November 12, 1943, the board officially returned a majority of the votes for Rehrig, and on November 20, 1943, a certificate of election was issued to him. The county board failed to publicly announce by posting at its office the final result of the election.

Appellant Koch first learned of his "defeat" on November 29, 1943; on December 6, 1943, he filed a petition to open the ballot box under Section 1701 of the Election Code of 1937, P. L. 1333, 25 PS section 3261. The box was opened in court on December 8, 1943, and a recount again gave Koch a sufficient majority to win. Ac-

cordingly, an order was made directing the election officials to explain the discrepancy between the return sheets and the single tally sheet. At a hearing on December 14, 1943, it was found that the tally strokes had been negligently transcribed from a work sheet to the tally sheet in question. In order to correct the board's negligence, appellant, on December 23, 1943, presented a rule to show cause why an appeal from the action of the computation board should not be allowed *nunc pro tunc*. An appearance de bene esse was made by appellee on January 25, 1944, alleging lack of jurisdiction. After hearing argument, the rule was dismissed; from that order this appeal is taken.

The relevant time limitations provided by the Election Code of 1937, supra, are as follows: (1) a petition for a recount must be filed within five days after the completion of the computation of the votes (Section 1404[f], 25 PS section 3154 and section 1703 [a], 25 PS section 3263); (2) an appeal from an order or decision of the county board regarding computation must be made within two days after such order (Section 1407 [a], 25 PS section 3157); (3) a petition for a contest must be filed within twenty days after the day of election (Section 1756, 25 PS section 3456). These statutory periods had all expired before appellant learned of the board's erroneous action. The learned court below decided that it had power to grant the appeal *nunc pro tunc* if appellant explained his delay satisfactorily. It held, however, that appellant had made no effort to acquire knowledge of the board's action until after the expiration of the statutory period and he was therefore guilty of laches.

In reaching this conclusion, the court apparently disregarded appellant's explanation of his delay. Appellant's position is that the negligent acts of the election board amount to fraud. He contends that the general returns posted outside the polling places showed his election; that the election board failed to publicly an-

nounce the result of the election and thus prevented him from receiving notice of the discrepancy in time to correct it. Under these circumstances, appellant argues that the delay was satisfactorily explained and the appeal should have been allowed *nunc pro tunc*.

Section 1225 of the Election Code, 25 PS section 3065, states: "(a) Immediately after the vote has been counted in districts in which paper ballots are used. . . . One of said returns shall be immediately posted for the information of the public outside the polling place. . . ." The posted return showed that appellant was duly elected. Although appellant was entitled to attend the meeting of the computation board (Section 1403 [a], 25 PS section 3153) such attendance was not mandatory. Under the circumstances, the posted return showing his election lulled him into a false sense of security, negativing the necessity to attend or to make inquiry.

There is no doubt that the board negligently computed the returns. It is required by Section 1404 (d), (1), of the Election Code, 25 PS section 3154, to compare the results from the unsealed returns with the sealed returns and with the tally sheets, and *if any discrepancies are discovered* ". . . the county board shall forthwith cause the ballot box of the district to be opened and the vote therein to be recounted in the presence of attorneys, watchers, and candidates interested. . . . ." It is further provided in (e), (1), that if a recanvass is made ". . . the said board shall give notice in writing . . . to each candidate . . . affected by the canvass, and each such candidate may be present in person or by attorney. . . ." The board completely neglected to carry out its statutory duty. Had its duty been complied with, a recount would have been ordered and appellant would have been notified.

Furthermore, the county board failed to publicly announce by posting at its office the final result of the election on November 20, 1943, as expressly required by

Section 302 (1) of the Election Code, 25 PS section 2642. Again, had this been done, appellant would have received notice of the erroneous result before the statutory limitations barred his remedies.

The learned court below, in its opinion, failed to discuss these uncontroverted violations of the Election Code by the board. It decided that, under the circumstances, appellant was guilty of laches. The opinion states that his failure ". . . to check upon the returns made by the Computing Board in time to take an appeal as by statute provided . . . [was not] a basis from which fraud or breakdown in the operations of the Computing Board or its officers, whereby this petitioner has been injured, is to be presumed. . . ."

On the contrary, it would seem that under the circumstances of the case, appellant should not be considered guilty of laches. There is no doubt that the court below had power to allow an appeal *nunc pro tunc*: see *Commonwealth v. Reiser*, 147 Pa. 342, 23 A. 454. The negligence of the computation board clearly caused appellant's injury. The computation board had been appointed by the court, due to the disqualification of the county commissioners. The case thus falls, by analogy, within the rule reiterated in *Nixon v. Nixon*, 329 Pa. 256, 198 A. 154, by Chief Justice KEPHART, at pages 259 and 260: ". . . the legislative purpose is not to foreclose a party who satisfactorily explains his delay. However, the occasion must be extraordinary. . . . Fraud, on the other hand (*Zeigler's Petition*, 207 Pa. 131; *York County v. Thompson*, 212 Pa. 561) or its equivalent, 'the wrongful or negligent act of a court official' (*Singer v. Del., L. & W. R. R. Co.*, 254 Pa. 502, 505) may be a proper reason for holding that, as to the injured person, the statutory period does not run and that the wrong may be corrected by means of a petition filed *nunc pro tunc* within a reasonable time."

Appeals from justices of the peace have often been allowed *nunc pro tunc* when the delay was caused by

the negligence of the justice: see collection of cases in footnote to *Nixon v. Nixon,* supra, pages 260, 261. The only election case we have been able to find involving an extension of a statutory time limitation is *Carbondale's Election,* 280 Pa. 159, 124 A. 298. This Court there allowed a certification of a recount after the expiration of the statutory period for a decision upon a proceeding to correct palpable fraud or mistake, where such decision was rendered impossible by a failure to raise fully the question of fraud until after the period expired. The resulting implication is that statutory limitations are not conclusive when good cause is shown. It should be noted that *Greenwood Township Election Case,* 344 Pa. 350, 25 A. 2d 330, does not apply to the point now under consideration, because the second recount in that case was still within the statutory period.

When appellant first learned of the action of the election board on November 29, 1943, the only appropriate remedy then available under the Election Code was that set out in Section 1701, 25 PS section 3261. This section requires the court of common pleas to open the ballot box at any time within four months after the date of the election and recount the vote when it is alleged that ". . . fraud or error, although not manifest on the general return of votes made. therefrom, was committed in the computation of the votes. . . ." It is not denied that appellant properly proceeded under this section in order to determine the *cause* of the erroneous computation. See *McLaughlin's Appeal,* 345 Pa. 498, 500, 29 A. 2d 45, for a discussion of Sections 1701-1703. The primary purpose of Section 1701 is to secure an accurate count and a true return of ballots actually cast at election: *Fishingcreek Township Election Case,* 144 Pa. Superior Ct. 277, 281, 19 A. 2d 491; and see the following cases similarly construing the Act of April 23, 1927, P. L. 360, repealed, which contained provisions substantially identical with those of Section 1701 of the Act of 1937: *Luzerne County Election Returns,* 301 Pa. 247,

151 A. 897; *Steelton Borough's Election Case,* 129 Pa. Superior Ct. 302, 195 A. 466.

Upon correctly proceeding under Section 1701, the negligence of the board was ascertained at the hearing on December 14, 1943. Appellant was then confronted with the problem of rectifying the mistake so discovered. The section applicable to the correction of false computations found under Section 1701 is Section 1703, 25 PS section 3263. This section, however, does not provide for the correction of entries made *erroneously,* which are discovered, as here, after the issuance of the certificate of election. Therefore, under Section 1701, appellant was allowed four months after the election in which to petition for an opening of the ballot box to discover whether errors were committed in the computation of the votes, but only allowed a maximum of twenty days to institute a contest, and that only if *fraud* were discovered. It therefore appeared that the only appropriate remedy by which the negligence of the election board could be corrected was by an appeal *nunc pro tunc* for a recount under Section 1407, 25 PS section 3157.

It is true that those seeking an allowance of an appeal *nunc pro tunc* in an election matter must be held to a stricter rule than those in a controversy between individuals, but it is also important that a majority of the voters should not have a representative forced upon them who is not of their choosing. Appellant had the right to depend on the election board correctly performing its duties. Under the very exceptional and unusual circumstances here presented, it cannot be said that he was guilty of laches.

The decree dismissing the rule is reversed. The certificate of election issued to appellee is hereby suspended and the appeal allowed *nunc pro tunc.* Costs to be paid by the Borough of Lehighton.