This is an appeal from an order made on October 31, 1949, by the Court of Common Pleas of Schuylkill County, setting aside a petition to place upon the ballot for decision at the election of November 8, 1949, the question whether motion pictures may be exhibited on Sundays in the City of Pottsville. Upon an appeal being taken to this Court we granted a supersedeas.
At the election held on November 8, 1949, the Pottsville electors voted 5,732 to 3,418 in favor of Sunday moving pictures.
The referendum petition was filed under the provisions of the Act of July 2, 1935, P. L. 599, as amended, *Page 462 4 P. S. § 59, et seq. The Act provides such a petition must contain signatures of qualified electors equal to twenty per cent of the highest vote cast for any candidate at the last preceding general election. The highest vote cast for such candidate in the election of 1948 in Pottsville was 7,671. Therefore, it was necessary that the petition be signed by 1,535 qualified electors.
A petition containing 2,515 names was filed with the City Clerk of Pottsville on September 6, 1949. On the same day, at a special meeting of City Council, the petition was received, and on September 7, 1949, it was certified to the Board of County Commissioners of Schuylkill County, which constitutes the County Board of Elections.
On September 9, 1949, the County Board of Elections directed the Chief of the Election Bureau to place the question of Sunday movies on the ballots which were to be used in Pottsville at the municipal election on November 8, 1949.
On October 10, 1949, the President of the Pottsville Ministerial Association filed a petition to set aside the referendum petition, on the ground that, because of illegal signatures, forgeries, alterations and erasures, and lack of addresses or occupations, it did not contain the minimum number of signatures required by law.
The reason given for the delay in filing the objections was that on October 6, 1949, the objector first learned that the referendum petition was not compared with the registration list of the City of Pottsville.
Hearings were held on October 13, 14 and 18, 1949. At the outset of the hearings, the referendum petitioners presented a motion to dismiss on the ground that the objections were filed too late. The motion was denied. During the course of the hearings, the objector sought to show that the referendum petition failed to conform to the statutory requirements. He introduced testimony that some of the signers were not registered voters, that *Page 463 
a few signers did not reside in the City of Pottsville, that one person whose name appeared on the petition did not sign it, and that some signers had omitted to insert the word "Pottsville" after their names, and in some instances had failed to insert any address or occupation. He produced a witness, purportedly a handwriting expert, who expressed the opinion that in numerous cases two, and in a few instances a larger number of, names were in the same handwriting. He also called attention to the fact that erasures appeared on some pages of the petition.
On October 31, 1949, Judge CURRAN sustained the objections to the petition, and directed that it be set aside.
The first question involved is: May objections to proposed Sunday moving picture referendum petition be normally
considered by the the Court of Common Pleas when the objections are filed 31 days after the petition for the referendum was filed with the corporate authorities?
The second question involved is: Since the objections to the petition were made more than seven days after the petition had been filed with the corporate authorities, were there any facts which warranted the court's permitting the objections to be filed nunc pro tunc?
The court below answered the first question in thenegative, but it answered the second question in theaffirmative. If our answers to both questions are in the negative there is no necessity for discussing the other two questions raised by the appellant (which relate to the competency of a handwriting expert's testimony and to certain alleged alterations in the petition for the referendum).
The conduct of a referendum on a question of exhibiting motion pictures on Sundays is governed by the Act of July 2, 1935, P. L. 599, as amended, 4 P. S. § 59 to 66. Section 5 of the Act provides as follows: "In any municipality *Page 464 
the will of the electors with respect to the conducting, staging, and exhibiting of motion pictures and sound motion pictures on Sunday may, . . . be ascertained, and the question, as provided in section 3 of this act, shall be submitted to the electors of any municipality at any municipal election upon demand in writing of petitioners equal to at least twenty per centum (20%) of the highest vote cast for any candidates in the municipality at the last preceding general or municipal election. Such petition shall be filed with the corporate authorities at least sixty (60) days before the day of any municipal election at which the question is to be submitted, and, if the petition is signed by the requisite number of petitioners, it shall thereupon be certified to the county commissioners, who shall cause such question to be submitted in the same manner as is provided in this act for the election in the year one thousand nine hundred and thirty-five (1935)."
Section 3 of the Act (4 P. S. § 61) provides as follows: "At the municipal election in the year one thousand nine hundred and thirty-five (1935), there shall be submitted, in the manner provided by the election laws of the Commonwealth, . . . a question to determine the will of the electors of each municipality in this Commonwealth, so petitioning, with respect to motion picture exhibitions. . . ." Section 5 of the Amending Act of June 25, 1941, P. L. 209, 4 PS Section 63 (1948 Pocket Part) provides for referendums "not oftener than once in four years."
Section 977 of the Election Code, Act of June 3, 1937, P. L. 1333, 25 PS 2937, as amended May 21, 1943, P. L. 353, sec. 1, provides as follows: "All nomination petitions and papers received and filed within the period limited by this act shall be deemed to be valid, unless, within seven days after the last day for filing said nomination petition or paper, a petition is presented to the court of common pleas of the county in which the *Page 465 
nomination petition or paper was filed, specifically setting forth the objections thereto, and praying that the said petition or paper be set aside. . . ." Upon the presentation of such a petition, a hearing must be held "not . . . later than ten days after the last day for filing said nomination petition or paper," and the Court "shall finally determine said matter not later than fifteen (15) days after the last day for filing said nomination petitions or papers. . . ."
The question is: What was the last day for filing the petition? Appellant says it was on September 9, 1949 (60 days before election day). Appellee contends that it was seven days later, i.e., September 16. The objections were filed October 10.
Appellee says that "the application of Section 977 of the Election Code, dealing with the time for filing objections to nomination petitions, to a movie referendum is unsound and impracticable because it does not furnish a rule of guidance. There is a 'deadline' or last day fixed for filing a nominating petition; namely, 20 days before the date of the Primary as provided by Section 953 (25 PS 2913), but there is no last day specifically fixed, either in the Movie Act or the Election Code, for filing a movie referendum petition. It does not seem logical to apply a section dealing with things to be done with respect to a Primary Election to similar things to be done before a Municipal Election. Certainly, it cannot be successfully argued that the date for filing a movie petition with corporate authorities shall be the 'last day' for filing, because the petition must thereafter come over to the Election Bureau by certification of those authorities. This, it seems to us, may be done within 60 days of the date of the election."
Appellee after stating that "a movie referendum is a special election and, hence, comes within the special election provisions of the Code", adds, "When we examine *Page 466 
the Election Code, we find a complete system of procedure for special elections as set forth in Sections 626[1] to 637, inclusive (25 PS 2776-2787)." Appellee argues that since nomination certificates and nomination papers for United StatesSenator can be filed in the office of the Secretary of the Commonwealth at least 30 days prior to the date of such special election, that petitions for a moving picture referendum may be filed with the proper authorities 30 days prior to the "special election" to pass on the question submitted.
The answer to this is twofold: First, while the election to fill a vacancy in the office of United States Senatoris a "special election" and while a referendum on the question of Sunday moving pictures may also be called a "special election", that fact alone does not make the provisions for filling vacancies in the office of United States Senate applicable to the referendum as to Sunday moving pictures. Second, the argument is negatived by the fact that the Act governing a referendum on exhibiting motion pictures on Sunday provides that such petition shall be filed with the corporate authorities at least *Page 467 60 days before the day of any municipal election at which the question is to be submitted for decision. There is nothing ambiguous about that provision and its plain mandate must be recognized and obeyed.
If analogies are to be helpful in determining the question before us we can find one in Article V of the Liquor Control Act of June 16, 1937, P. L. 1762, 47 PS, sections 744-501, et seq., which provides that a local option referendum may take place at the primary preceding the municipal election ("but not oftener than once in four years") if a proper electors' petition is filled with the County Commissioners at least sixtydays before the primary election date. This Act and the Act providing for a referendum on the subject of Sunday moving pictures furnish evidence of the fact that the legislature in providing for local option referendums on such matters as the sale of liquor and exhibiting motion pictures on Sunday believes that petitions asking for such referendums should be filed at least 60 days before the election date. This 60 day period affords ample time for the filing of objections to the petition, for the court to pass upon the objections, and for public discussion of the desirability or undesirability of the matter to be decided by the referendum. In construing any act which requires construction "good sense and practical utility" are always to be considered: 1 Kent 310.
As soon as a petition for a referendum on the question of Sunday moving pictures is filed with the corporate authorities it must, if it is signed by the requisite number of petitioners, "thereupon be certified to the County Commissioners". "Thereupon" means "immediately after that", or, "without delay". The seven day period during which according to "the manner provided by the election laws", objections may be filed to the *Page 468 
petition begin to run as soon as the petition is "filed with the corporate authorities". That is the only "filing" for which the Act provides. What would be the situation in the event that the corporate authorities negligently or fraudulently delayed the certification of the petition to the County Commissioners we need not now decide because here there was no delay. The petition was filed with the City Clerk of Pottsville and was acted upon by the Council of the City of Pottsville, on September 6, 1949. On September 7, 1949, the petition was certified to the County Commissioners.
The court below correctly decided that the time for filing objections to this petition for a moving picture referendum was seven days after the filing of the petition with the corporate authorities on September 9, 1949. The court said that ". . . some ambiguity exists as to the time fixed for the filing of objections to Sunday Movie petitions because of the impracticability of 'filing' such petitions with municipal authorities. In the instant case such a problem does not present itself and the statutory period has expired. The petition, if considered by the Court, must be as a petition or appeal nunc pro tunc. The Court has inherent and well established power where proper circumstances exist to entertain an appeal or petition nunc pro tunc." The court then cites the case of Koch Election Contest Case, 351 Pa. 544, 41 A.2d 657, in which we quoted from Nixon v. Nixon, 329 Pa. 256, at pages 259 and 260, 198 A. 154, at page 157, as follows: ". . . the legislative purpose is not to foreclose a party who satisfactorily explains his delay. However, the occasion must be extraordinary. . . . Fraud, on the other hand (Zeigler's Petition, 207 Pa. 131, [56 A. 419]; York County v. Thompson,212 Pa. 561, [61 A. 1024]) or its equivalent, 'the wrongful or negligent act of a court official' (Singer v. Delaware, L. W. R. R. Co., 254 Pa. 502, 505, [98 A. 1059, 1069]) may be a proper reason for *Page 469 
holding that, as to the injured person, the statutory period does not run and that the wrong may be corrected by means of a petition filed nunc pro tunc within a reasonable time."
The court then makes the following statement: "The testimony taken at the hearing on the petition to be set aside clearly discloses that the County Board of Elections innocently but erroneously neglected to perform the duties prescribed by" paragraph 976 of the Act of June 3, 1937, P. L. 1333, 25 PS 2936.[2] The court continues: "We are of the opinion that the circumstances of this case are extraordinary and warrant the consideration of the petition to set aside in order to prevent fraud . . . the County Board of Elections innocently and erroneously failed to perform the duty of examining the petitions presented to them before actually filing."
The court's reasoning is based on the assumption that the county board of elections had the duty of examining the petition for apparent material errors or defects and for material alterations. This assumption is erroneous; the board has no such duty to perform in respect to a petition for a referendum on the subject of permitting motion pictures to be exhibited in certain *Page 470 
municipalities after 2 P.M. on Sunday. When the petition came to the commissioners it had already been "certified" by the officials to whom the law gave the requisite authority. Webster's International Dictionary defines the verb "certify" as follows: "To endorse authoritatively as being of the standard quality, qualification, etc. . . . required."
It is unreasonable to assume that the legislature intended the corporate authorities with whom the Act directs such petition to be "filed" and to whom the power to "certify" is given, to be mere conduits through which the petition passes on its way to the county commissioners' office. The corporate authorities having in the exercise of their right "certified" the petition to the county commissioners, the latter had to "cause" the question to be submitted to the electors as the Act of July 7, 1935, expressly provides.[3]
The Election Code as amended on May 21, 1943, P. L. 353, sec. 1, 25 PS 2937 (1948 Pocket Part), provides: "All nomination petitions and papers received and filed within the periods limited by this act shall be deemed to be valid, unless, within seven days after the last day for filing said nomination petition or paper, a petition is presented to the court of common pleas of the county in which the nomination petition or paper was filed, specifically setting forth the objections thereto, and praying that the said petition or paper be set aside." After the petition for a Sunday moving picture referendum was filed with the corporate authorities and certified by them to the county commissioners the only way the petition could be attacked was by the proceeding *Page 471 
just stated. The petition was not so attacked within the period statutorily prescribed, and under the facts presented by this record no case was made out for the filing of the objections nunc pro tunc. This case is ruled by the decision of this Court in American Labor Party Case, 352 Pa. 576, 44 A.2d 48, where we said that "the statutory time limit [for attacking the validity of the petitions referred to] is mandatory".
Having decided that the objections to placing on the official ballot used at the election in Pottsville on November 8 last the question of whether or not moving pictures should be exhibited after 2:00 P.M. on Sunday were not filed in time and, therefore, were not properly before the court it is unnecessary to decide whether the objections were well founded. However, we think there is considerable merit in appellant's contention that of the 2515 signatures contained on the referendum petition only 807 should have been stricken off. This would have left a residue of 1708 names on the petition, or 173 more signatures than were required to validate it. This court having ordered that the appeal in this case should operate as a supersedeas, the qualified voters of Pottsville were given an opportunity to vote on the question of Sunday moving pictures and of the 9150 votes cast a majority of 2314 voted "Yes" on the question: "Do you favor the conducting, staging, operating or exhibiting of motion pictures regardless of whether an admission charge is made or incidental thereto or whether labor or business is necessary to conduct, stage, operate or exhibit the same after two o'clock post meridian, on Sunday?"
Because of our order of November 2nd making the appeal a supersedeas the October 31st order of the court below, directing that the moving picture referendum be set aside and directing the commissioners of Schuylkill County not to print ballots containing the aforesaid *Page 472 
question for submission to the voters of Pottsville on November 8, 1949, became inoperative. If we now affirmed the order of the court below the vote on the moving picture referendum would be adjudged a nullity, but deciding as we do, that the order of the court was erroneous and should be set aside, the referendum must be adjudged legal and the majority of votes cast in favor of the question submitted must be given the effect prescribed by law.
The order of the court below is reversed.
[1] Section 626 refers to special elections for United States Senator and declares that "Said nomination certificates and nomination papers [for the office of United States Senator] shall be filed in the office of the Secretary of the Commonwealth at least thirty (30) days prior to the date of said special election." Section 627 refers to special elections for representatives in Congress. Section 628 refers to special elections for senators and representatives in the General Assembly. Section 629 refers to nominations for special election for representatives in Congress, Senators and representatives in the General Assembly. Section 630 refers to the number, form and requirements of nomination certificates. Section 631 refers to examination of nomination certificates and nomination papers by the Secretary of the Commonwealth. Section 632 refers to objections to "certificates of nomination and nomination papers to fill a vacancy as herein provided" and requires that objections thereto must be "filed in the court of common pleas of Dauphin County and with the Secretary of the Commonwealth, and within five (5) days next succeeding the last day for filing such certificates or papers. . . ."
[2] This section provides: "When any nomination petition, nomination certificate or nomination paper is presented in the office of the Secretary of the Commonwealth or of any county board of elections for filing within the period limited by this act, it shall be the duty of the said officer or board to examine the same. No nomination petition, nomination paper or nomination certificate shall be permitted to be filed if — (a) it contains material errors or defects apparent on the face thereof, or on the face of the appended or accompanying affidavits; or (b) it contains material alterations made after signing without the consent of the signers; or (c) it does not contain a sufficient number of genuine signatures as required by law: . . ."
In Boord v. Maurer, 343 Pa. 309, 22 A.2d 902, we said that in the performance of those duties prescribed the county board of elections is not a mere "ministerial body" but clothed with "quasi-judicial functions".
[3] It would have made for consistency and clarity if the legislature had declared that a petition for a Sunday moving picture referendum should be filed with the countycommissioners, as nominating petitions and local option petitions are, but it did not do so and we must apply the law as we find it.