# In re Northampton Borough Election

*Jerome W. Burkepile*, for appellant.

*M. W. Kutler*, for appellee.

BARTHOLD, P. J., December 10, 1951.—This is an appeal from an order of the Northampton County Board of Elections (hereinafter called the county board) certifying the computation of the returns of

the general election held on November 6, 1951. The appeal was taken by Floyd W. Keener pursuant to the provisions of section 1407 of the Election Code of June 3, 1937, P. L. 1333, 25 PS §3157, which provides, inter alia:

"Any person aggrieved by any order or decision of any county board regarding the computation or can-vassing of the returns of any primary or election, . . . may appeal therefrom within two days after such order or decision shall have been made, whether then reduced to writing or not, to the court of common pleas of the proper county, setting forth why he feels that an injustice has been done, and praying for such order as will give him relief. Upon the payment to the prothonotary of a fee of $3.00 for filing such appeal, a judge of the court shall fix a time and place for hearing the matter in dispute within three days thereafter, of which due notice shall be served, with a copy of such appeal, by the appellant upon a member of the county board whose action is complained of and upon every attorney, watcher or candidate who opposed the contention of the appellant before the county board, and upon any other person that the judge shall direct, at least two days before the matter shall be reviewed by the court. . . . The court on an appeal shall have full power and authority to hear and determine all matters pertaining to any fraud or error committed in any election district to which such appeal relates, and to make such decree as right and justice may require. . . ."

Appellant, Floyd W. Keener, was the Republican candidate for the office of councilman of the first ward of the Borough of Northampton, Northampton County, Pa., and Albert P. Bartholomew was the Democratic candidate for the same office. Keener received 205 votes and Bartholomew received 204 votes. There re-

mained to be computed with the foregoing election returns an "official military ballot" returned to the county board by William A. Ambrosino, a resident of the Borough of Northampton in actual military service. This military ballot was the only one returned by a "military elector" from that borough. In accordance with the provisions of the law relating to "Voting by Persons in Actual Military Service" (Act of March 6, 1951, P. L. 3, effective May 1, 1951), sworn clerks of the county board proceeded with the computation of "military ballots" on Friday, November 16, 1951. The computation of all of the votes (including the "military ballot" in question) cast for the office of councilman of the first ward of the Borough of Northampton was completed by the clerks on November 17, 1951, and attested by them on that date. The official record of the computation indicates that the lone vote cast by "military ballot" for the office of councilman of the first ward of the Borough of Northampton was credited to Bartholomew, thereby causing a tie vote. The computation made by the clerks was not signed by the county board until Friday, November 23, 1951, when the three common pleas judges, constituting the county board, certified to the correctness of the computation made by the clerks. Keener filed his appeal on November 26, 1951. The basis of the appeal is that William A. Ambrosino, the "military elector" who cast the ballot in question, had no right as a resident of the second ward of the Borough of Northampton to vote for a first ward councilman, and that therefore the county board committed error when it credited Bartholomew with an additional vote. On November 28, 1951, with the consent of the candidates and without prejudice to their rights, and with a specific reservation as to the legal question raised by Keener's appeal, a drawing was held to break the tie vote. Had Keener

won the drawing, there would be no controversy. Bartholomew, however, won the drawing and we are now called upon to decide the legal question raised by Keener's appeal.

The appeal was heard on November 28, 1951. Bartholomew filed a motion to quash, asserting in support of the motion "that . . . Floyd W. Keener . . . was 'aggrieved' by a decision of the county board of elections on November 16, 1951"; "that the county board of elections completed canvassing the vote in the councilmanic election in the first ward of the Borough of Northampton . . ., on November 17, 1951"; that, in consequence, the petition was not filed within the two-day statutory period. Bartholomew also asserts in support of the motion that the "court has no jurisdiction over the subject matter".

In order to expedite the proceedings, the court, with the consent of the parties, took the motion to quash under advisement and proceeded with a hearing on the appeal. Keener called Edward J. McGovern, chief clerk to the county registration commission, to prove the "veterans' file" and the registration record of "military elector" William A. Ambrosino, together with other related matters. Mr. McGovern testified than Anthony Ambrosino, father of William A. Ambrosino, orally requested that a "military ballot" be sent to his son. At the time the request was made the father gave Mr. McGovern a slip of paper upon which he had written his son's military address. The paper was handed by Mr. McGovern to one of the clerks in the registration office then engaged in making up the "military ballots". The paper was later returned to Mr. McGovern with the notation "2218 Main". Mr. McGovern then placed thereon the notation "First Ward, Northampton". A ballot for the first ward of the Borough of Northampton was then sent to Wil-

liam A. Ambrosino. The "veterans' file" contains the following information: "William A. Ambrosino, 2218 Main Street, Northampton, First Ward." This is the only "military electors" name from the Borough of Northampton appearing on the "veterans' file". The records in the registration office indicate that a "military ballot" was sent to William A. Ambrosino on October 27, 1951, and returned on October 30, 1951. The envelope in which the "military ballot" was returned bears the affidavit and signature of William A. Ambrosino, stating that his voting address is "537 E. 20th Street, City of Northampton, County of Northampton". The affidavit does not give the ward in which residence 537 E. 20th Street is located, but it is in fact in the second ward of the Borough of Northampton. All of the "military ballots" were opened on November 16, 1951. They were computed and entered into the official returns on November 16 and 17, 1951. The official returns were attested by the clerks on November 17, 1951, and were signed by the three judges constituting the county board on November 23, 1951. No challenges were made when the "military ballots" were opened, computed and entered of record.

Keener also called Mrs. William A. Ambrosino to testify as to the residence of her husband. She testified that she was married to William A. Ambrosino on June 30, 1951; that immediately after the marriage she and her husband resided together at 537 E. 20th Street, second ward, Borough of Northampton; that her husband is stationed at a Naval base and returns home two or three times a week; and that immediately prior to their marriage her husband resided at 1705 Main Street, second ward, Borough of Northampton. Bartholomew offered no testimony. All of the foregoing facts are uncontroverted.

It is our considered judgment that under the facts and the law Keener's appeal was taken in strict conformity with section 1407 of the Election Code, supra. Under this section of the code the appeal is from *"any order or decision of any county board"* and the appeal may be taken by "any person aggrieved" by such "order or decision". (Italics supplied.) Bartholomew contends that "Keener . . . was 'aggrieved' by a decision of the county board . . . on November 16, 1951"; that it was incumbent upon Keener to appeal within two days thereafter or within two days from November 17, 1951, when the canvassing of the vote in the councilmanic election in the first ward of the Borough of Northampton was completed, and that since the appeal was not filed until November 26, 1951, it was barred by the two-day statutory limitation.

It is of the utmost importance in passing upon the merits of this complaint to keep in mind that the county board consisted of the three common pleas judges not their clerks. The Election Code authorizes the county board to appoint sworn clerks to assist in the computation and canvassing of the votes (Act of June 3, 1937, P. L. 1333, sec. 1403, 25 PS §3153(*a*)), but the members of the board must sign the final computation and issue certificates of election to the successful candidates: Act of June 3, 1937, P. L. 1333, sec. 1404, 25 PS §3154(*a*) (*f*)). In the instant case the clerks completed their computations and attested the results on November 17, 1951. The judges did not sign or certify the results until November 23, 1951. In these circumstances the only appealable order or decision of the county board was the one made by the judges on November 23, 1951. Until the result of the councilmanic vote in the first ward of the Borough of Northampton was signed and certified by the judges, Keener, the "person aggrieved" thereby, was not offi-

cially apprized of the action taken by the county board. (Cf., Phillips' Appeal, 262 Pa. 396, 399, wherein the court held that appellant was aggrieved by the act of the commissioners when they certified his opponent's nomination.) Keener filed his appeal on November 26, 1951, three days after the county board signed and certified the return. Since the second day after the certification fell on a Sunday, the Monday following became the deadline for filing the appeal: Statutory Construction Act of May 28, 1937, P. L. 1019, art. III, sec. 38, 46 PS §538.

The act regulating appeals of this type contemplates controversial matters arising during the computation which require an "order or decision". The act provides that "a judge of the court shall fix a time and place for hearing *the matter in dispute* . . . of which due notice shall be served . . . by the appellant upon a member of the county board *whose action is complained of* and upon every attorney, watcher or candidate *who opposed the contention of the appellant before the county board, . . .*" (Italics supplied.) The record in the case under consideration discloses that there was no dispute at any time during the computation as to the validity of William A. Ambrosino's military ballot. Therefore the county board, during the computation, was not called upon to make any "order or decision" relative thereto.

For the reasons hereinabove given we are of the opinion that the appeal is properly before us and that this court "has the right . . . to make such decree as right and justice may require". The motion to quash the appeal is therefore dismissed and we will proceed to a consideration of the merits of the appeal.

Addressing ourselves to the merits of the case we find that the application for the "military ballot" in question was not in conformity with the requirements

of section 1302(*b*) of the Act of March 6, 1951, governing "Applications for Official Military Ballots", which provides:

"(b) The application shall contain the following information: Residence at the time of entrance into actual military service, length of time a citizen, length of residence in Pennsylvania, date of birth, length of time a resident of voting district, voting district, party choice in case of primary, name, rank or grade, military address, branch of service and serial number. . . . (c) The application for a military ballot in any election may be made or information supplied over the signature of any person who is familiar with the voting qualifications of the military elector, as required in the preceding subsection."

Anthony Ambrosino, father of William A. Ambrosino, appeared in the office of the registration commission and orally requested that a "military ballot" be sent to his son. He presented a paper upon which he had written his son's military address but not his voting address. It appears that when the "military file" was prepared the father's voting address in the first ward of the Borough of Northampton was used on the assumption that the son also resided there. Had the registration clerk properly checked the son's registration he would have ascertained that the son resided in the second ward, and a second ward ballot, rather than a first ward ballot, would have been forwarded to him. When the ballot was returned for computation the discrepancy between the address on the "military ballot" and the address contained in the affidavit and jurat of the "military elector" was overlooked. We hasten to point out that the foregoing errors arose through no fault of the "military elector". It was the duty of the regisration commission to insist upon a proper military ballot-application, and it was the duty

of the county board when computing this ballot to compare the information on the affidavit and jurat with the information contained on the "military file". The Supreme Court has said that this is a most important requirement and that the comparison is essential to the identification of the "military elector" as a qualified voter of the county and election district: Simon Election Case, 353 Pa. 514, 516.

We conclude, therefore, that the appeal is meritorious and that this court has a right to correct the erroneous computation of the councilmanic vote of the first ward of the Borough of Northampton. The court and everyone in the community now knows that a "military elector" innocently voted in the wrong district, bringing about the unique result that his vote threw the election into a tie, necessitating a drawing if the vote is to stand. Certainly it is not consonant to the spirit of our Constitution to elect a person to office by irregularity on the part of officials in computing returns. An election is the embodiment of the popular will, the expression of the sovereign power of the people. When the application of technical rules would tend to defeat the will of the people and change the result of an election, they should not be applied, and all reasonable intendments should be made in favor of a correct result, not a result founded upon error.

We do not agree with the contention that the court lacks jurisdiction over the subject matter of the controversy. The Act of March 6, 1951, governing the voting by persons in actual military service, contains mandatory provisions which compel the county board to identify each particular "military elector" as a qualified voter of the county and election district. The act expressly provides that "in disposing of an official military ballot the county return board or the county board of election shall examine the affidavit and jurat

and if the jurat bears a date later than the date of the election, the envelope shall be set aside unopened. . . . (section 1308 c and d)  The board shall then further examine the affidavit and jurat of each envelope not so set aside and shall compare the information thereon with that contained in the military file.  If the board is satisfied that the affidavit and jurat are sufficient and that the elector has qualified, and the board has utilized the information contained in the military file to verify his right to vote, the board shall announce the name of the elector and shall give any person present an opportunity to challenge in like manner and for the same cause, except failure to register or enroll, as the elector could have been challenged had he presented himself in his own district to vote other than by official military ballot.  If no challenges are sustained, the board shall open the envelope in such manner as not to destroy the affidavit and jurat printed thereon."

In passing upon these requirements, the Supreme Court in Simon Election Case, 353 Pa. 514, 519, condemns the failure of a county board of elections to comply with the plain requirements of the statute.

Even if it is assumed that the appeal was not filed in time, it is our considered judgment that it should be allowed nunc pro tunc.  Appellant Keener cannot be considered guilty of laches.  He was not put on notice of the errors committed by the election officials and was not "aggrieved" until the final computation was signed and certified on November 23, 1951.  The "military file" did not put him on notice of the error made in the county registration office.  Had he examined the "military file" he would have noted only that a military ballot had been sent to William A. Ambrosino, a voter residing at 2718 Main Street, first ward, Borough of Northampton.  There was no duty imposed upon him

to investigate the truth of this information. While the law permitted Keener to attend the meetings of the computing board, such attendance was not mandatory. As a matter of fact, Keener had a right to assume that the county board would carry out its mandatory duty of comparing the "military file" with the affidavit and jurat on the military envelope returned by the "military elector". "Where acts are of an official nature . . . a presumption arises in favor of their due execution. . . .": Simon Election Case, 353 Pa. 514, 521. If Keener was dilatory in acquiring knowledge of the action of the county board, and we are firmly of the opinion that he was not, his alleged delay is satisfactorily explained and the appeal is a proper one for allowance nunc pro tunc: Koch Election Contest Case, 351 Pa. 544, 548.

For the reasons hereinabove given, we are of the opinion that the single military vote for councilman of the first ward of the Borough of Northampton should be deleted from the votes computed in favor of Albert P. Bartholomew, and that the return of the county board should be corrected and certified so as to indicate that Floyd W. Keener received 205 votes and Albert P. Bartholomew received 204 votes.

### Order

Now, December 10, 1951, this matter came on to be heard before the court en banc, and it appearing that substantial error was committed in the computation of the votes cast for councilman in the first ward of the Borough of Northampton, it is now ordered and adjudged that the correct count is: Floyd W. Keener, 205 votes; Albert P. Bartholomew, 204 votes. The county board is directed to correct its records in accordance with this order.