## Thomas v. York County Board of Elections

*John W. Thompson, Jr.,* for plaintiff.
*Jon C. Countess,* for defendant.

ATKINS, P. J., June 8, 1972.—Curvin C. Thomas has petitioned for leave to appeal nunc pro tunc from the action of the County Board of Elections. We held a hearing at which time we heard testimony on the issue of his entitlement to appeal nunc pro tunc, and also on the merits of his claim of error on the part of the board.

Thomas was a candidate for the office of committeeman of the Republican Party of the Third District of West York Borough.

We consider first his right to appeal nunc pro tunc. From the record we find the following facts: After the polls closed for the primary election on April 25, 1972, the Election Board of the Third District of West York Borough canvassed the votes registered on the machines in the district. This canvass showed that Thomas received a total of 53 votes and that the next highest vote for committeeman was 40 votes for Philip M. Koble. As required by section 1228 of the Election Code of June 3, 1937, P. L. 1333, 25 PS §3068, a

statement of the results of the election was posted on the door of the polling place showing Thomas to have received 53 votes and Koble 40, thereby indicating the election of Thomas.

Sometime after the election, Mrs. Thomas received a call from someone connected with the office of the Republican County Committee Headquarters. The caller inquired about the election of committeeman from the Third District of West York Borough. Mrs. Thomas replied, "We won." (She was also a candidate and was the winner for the post of female committeeman). The caller said something to the effect that there was some question for the figures at the court house indicated that Mr. Thomas had lost. Neither Mr. nor Mrs. Thomas could state when this call was received. They were satisfied that it was received a week or two after the election, most likely May 5, 1972.

The board certified the results of the election after the official count on May 12, 1972. This certification indicated the election of Philip M. Koble and Mrs. Thomas as the committeeman and committeewoman for the Republican Party for the Third District of West York Borough. On May 19, 1972, the board sent certificates of election by mail to Mr. Koble and Mrs. Thomas.

After he received his certificate, Mr. Koble called Mrs. Thomas to inquire if they had received certificates. She told him that she had but that her husband had not. Mr. Koble then advised her that he had received a certificate. This was the first time that either Mr. or Mrs. Thomas had knowledge of the fact that the posted returns on the door of the polling place may not have shown the correct result of the election. Mrs. Thomas made no inquiry to the board after the phone call from the Republican County Committee Office. She did, however, impart to her husband the information re-

garding the call, but he made no inquiry at the County Board of Elections either.

The court does have power to allow an appeal nunc pro tunc where it appears that there was an error on the part of the board and appellant had no knowledge of it: Koch Election Contest Case, 351 Pa. 544. "The Election Code must be *liberally* construed so as not to deprive an individual of his right to run for office, or the voters of their right to elect a candidate of their choice": Perles v. Hoffman, 419 Pa. 400, quoting Ross Nomination Petition, 411 Pa. 45.

In Koch, supra, the court emphasized that the error alleged was the fault of the election board and not of the candidate seeking the right to appeal, that the candidate had a right to rely on the accuracy of the results posted at the polling place, that he was under no obligation to attend the official canvass of the vote, (although he had a right to do so), and that he had no knowledge that would put him on notice that action on his part was necessary to protect his apparent victory until after the two-day appeal period expired.

In this case, we do have the fact of the telephone call of the Republican County Committee to Mrs. Thomas to inquire about the results of the election regarding the office of committeeman. We think the substance of this conversation as testified by Mrs. Thomas indicates that the call was more of an inquiry than one for the purpose of imparting information to the Thomas'.

It is true that there is a suggestion that the figures at the court house may indicate that Mr. Thomas was not elected. However, our understanding of the conversation is that the caller did not intend to pass on such information as a verity. While it is true that ordinary people around a political party's headquarters pick up more information about political doings than

someone not so close to political activity, we see little difference between this telephone call and a similar one coming from the person not connected with any party organization. There are few places where rumors are more rife than around a political headquarters. We do not feel that the information received by Mr. and Mrs. Thomas as a result of this phone call was such as to put them on notice of facts that would require some active step on their part to protect Mr. Thomas' apparent victory. We conclude that he, therefore, is entitled to have his appeal considered nunc pro tunc

On the issue of the merits of the appeal, we are satisfied that the certification of the election of Philip M. Koble was in error. An examination of the tally sheets shows that Mr. Thomas received two votes by absentee ballot, 31 votes on one machine, and 20 votes on the second machine, for a total of 53 votes. The same sheets show that Mr. Koble received 1 vote by absentee ballot, 22 votes on one machine, and 17 votes on the second machine, for a total of 40 votes. The general return sheet clearly shows these results, and these are the results that were posted on the door of the polling place.

The difficulty arises from the duplicate tally sheet and came about largely because the names of the candidates for this office were written on alternate lines of the sheets, thereby leaving a blank between each two names, The record of the vote by absentee ballot, and by each of the machines, is recorded in every instance on the same line as is the name of the candidate for whom those votes were cast. The totals for the two candidates whose names appear first and second on the sheet are carried on the same lines as the name of the candidate and the respective sources indicated. However, when the figures for the third candidate,

whose name appeared on line 5, were recorded, the total was recorded on line no. 4, rather than line 5 so that the total appeared on a line that contained nothing but the total figure; whereas, the line containing the name of the candidate and the votes received from the respective sources indicated the candidate's name, but no total at all. This continues then throughout the balance of the sheet so that from the third candidate to the end of the list, there is no total on any line opposite the name of the candidate save one, which is of no materiality here. It is thus apparent that the clerks of the election board in transferring the returns to the official tally, picked up the wrong totals because of the misplacement of these totals on the duplicate tally sheet.

We find then as a fact that Mr. Thomas did receive 53 votes, which is the highest number of votes cast for any male candidate for the post of committeeman of the Republican Party of the Third District of West York Borough, and that, therefore, he should have received the certification of election and that thereby the certificate issued to Philip M. Koble was in error.

Accordingly, we enter this

## ORDER

And now, to wit, June 8, 1972, it is ordered and adjudged that the County Board of Elections issue a certificate of election to Curvin C. Thomas for the office of committeeman of the Republican Party for the Third District of West York Borough, and the certificate heretofore issued by this office to Philip M. Koble is hereby declared void.