Turtzo, Appellant, *v.* Boyer.

Argued April 14, 1952. Before DREW, C. J., JONES, BELL, CHIDSEY and MUSMANNO, JJ.

*Israel Krohn,* with him *Edmund P. Turtzo,* for appellant.

*Everett Kent* and *Richard D. Grifo,* County Solicitor, with them *Joseph G. Hildenberger,* for appellees.

OPINION BY MR. JUSTICE MUSMANNO, May 27, 1952:

On May 15, 1951, Fred McFall of the borough of Bangor, Northampton County, entered the St. Lukes Hospital in Bethlehem to undergo a serious operation, which did take place on May 17, 1951. Prior to his hospitalization he authorized certain friends, who had urged him to be a candidate for Justice of the Peace, to take whatever action might be required to qualify him as a candidate. A nomination petition was circulated in his name and the Qualified Elector's affidavit, as well as the Candidate's affidavit attached thereto, were signed by Chas. R. Steinmetz, county treasurer of Northampton County. The paper, with the affidavits appended thereto, was taken to Chris J. Hannon, Jus-

tice of the Peace, who affixed his jurat and filed it with other petitions with the County Board of Elections.

McFall, being the only candidate on the Democratic ticket, for Justice of the Peace, was duly nominated on July 24th. On September 28th, Ernest Turtzo, who received the nomination for the same office on the Republican ticket, filed a bill in equity in the Court of Common Pleas of Northampton County, seeking to restrain the county commissioners from printing the name of McFall on the ballot for November 6, 1951. The lower court dismissed the bill, and the petitioner appealed to this Court.

It is the contention of the appellant that since it is admitted McFall did not personally sign the Candidate's Affidavit and Steinmetz did not circulate the petition, nor swear to the affidavit he signed, the nomination petition was void and, therefore, McFall could not have been elected in November.

Section 977 of the Pennsylvania Election Code Act of June 3, 1937, P. L. 1333, Art IX, as amended May 21, 1943, P. L. 353, Sec. 1, provides, inter alia: "All nomination petitions and papers received and filed within the periods limited by this act shall be deemed to be valid, unless, within seven days after the last day for filing said nomination petition or paper, a petition is presented to the court of common pleas of the county in which the nomination petition or paper was filed, specifically setting forth the objections thereto, and praying that the said petition or paper be set aside."

This means, therefore, that unless objections were filed on or before May 28, 1951, (the last day for filing such petition being May 21st) McFall's nomination petition would be deemed valid. Ernest Turtzo did not file his objections until September 28th, four months after the last day for taking such action.

The appellant urges that this provision of the Election Code has no application where fraud is involved.

The lower court did not decide whether the assumed facts with regard to the filing of the nomination petition, in themselves, constituted fraud, nor do we. It was established, however, that the plaintiff visited the office of the county Board of Elections and inspected the petition within the week after its filing. There is no evidence that anyone on behalf of McFall attempted to conceal the procedure which had been followed, it being simply asserted that his friends had acted under McFall's instructions and authorization in view of McFall's serious illness and hospitalization.

Why did Ernest Turtzo wait four months to protest what was a matter of record?

This Court held definitively in *American Labor Party Case,* 352 Pa. 576, 44 A. 2d 48, that the provision of the Election Code requiring that petition to set aside a nomination petition be presented to the Court of Common Pleas within seven days is mandatory and cannot be waived.

The plaintiff contends, however, that this rule does not apply where a fraud has been perpetrated since fraud vitiates the entire proceedings involved. But fraud when discovered must be acted upon with dispatch. It is not enough to allege fraud; it must be established that the perpetrator of the fraud made efforts to conceal the fraud if the statutory period for appeal has expired. The lower court well expressed the principle involved here when it said: "In an action based upon a fraud, the statute of limitations will run from the date of the fraudulent act complained of, unless such fraud has been actively concealed by the wrongdoer: Smith v. Blachley, supra.

"The application of the principle of laches is not postponed because of fraud or concealment of the wrongdoer in the original transaction; to excuse delay of the injured party in asserting his rights there must be an independent act of fraud or concealment

which misled or prevented discovery. In determining whether the rights claimed should have been more promptly asserted, plaintiff is chargeable not only with what he knew but also with what he could have discovered with reasonable diligence: Barnes and Tucker Company v. Bird Coal Company, 334 Pa. 324.

"Assuming, as alleged, there were fraud in the execution of the affidavits to the instant nomination petition, *there was no independent act of fraud or concealment which misled plaintiff or prevented discovery.*" (Italics supplied).

There was no proof here, nor was any contention to that effect made, of any concealment of facts surrounding the execution of the affidavits. Where ignorance of rights or wrongs is relied on, to account for laches and failure to seek relief within the limitation provided by statute, it must be alleged and proved why the plaintiff was kept in ignorance, and why the facts could not have been discovered by the exercise of due diligence. ". . . the tendency of courts in recent years has been to hold the plaintiff to a rigid compliance with the law which demands, not only that he should have been ignorant of the fraud, but that he should have used reasonable diligence to have informed himself of the facts." (*Patton et al. v. Commonwealth Trust Co., Exr.,* 276 Pa. 95.)

The Pennsylvania Election Code specifically provides for the action to be taken by an assumed aggrieved party in a situation of the kind outlined in this case. The appellant chose to disregard that procedure. This Court said, in *Thompson v. Morrison,* 352 Pa. 616, 44 A. 2d 55. "If the regulations provide, as they have provided, how alleged infractions of the election law shall be dealt with, the procedure must be followed. If, by inadvertence or other cause, a complaining citizen elects not to pursue the statutory remedy, he must fail for want of

compliance with the mandate of the legislature." If no steps are taken to challenge nomination petitions within the statutory period of seven days after the last day for filing nomination petitions, "the result," as Mr. Justice LINN pointed out in the *Thompson Case,* "in the words of the statute, is that the 'papers . . . shall be deemed to be valid.'"

If the appellant could legally wait four months to contest an election paper, he could wait four years.

It is because the lawmakers of the State were aware of the inertia inherent in an unestimated percentage of the population, and the great harm which can be visited upon others because of that inertia, that it categorically established time limits for the various procedures required in the operation of the Pennsylvania Election Code. Unless time limits were set within which to challenge the results of elections, government would permanently sit on a shaky foundation, and the citizenry would never be certain of the identity of the office-holder chosen to direct and operate the complex activities of the State, County and Municipality. Civilization must protect itself from the sluggard, as well as from the evildoer. The lazy railroad watchman, who fails to lower a safety gate in time, can inflict as much harm on innocent passengers as the bandit who holds up the train.

Whatever rights accrued to the plaintiff in the irregularities he claims against his opponent, were dissolved by him in the alembic of his own indecision.

The appeal is dismissed with costs to be paid by the appellant.

————

CONCURRING OPINION BY MR. JUSTICE JONES:

I concur in the dismissal of this appeal on the ground that the matter which it sought to raise has long since been moot. Indeed, it was moot in all re-

spects a month before the appeal was taken. If, however, the merits are looked into, it will be found that equity is without jurisdiction: *Thompson v. Morrison*, 352 Pa. 616, 623, 44 A. 2d 55.