346 A.2d 260

**In re Petition of Frank JONES Jr., Democrat Candidate for Washington County Treasurer, Appellant.**

Supreme Court of Pennsylvania.

Argued Sept. 26, 1975.

Decided Oct. 16, 1975.

Salvatore Panepinto, D. Keith Melenyzer, Charleroi, for appellant.

Gustave Diamond, Cooper, Schwartz, Diamond & Reich, Pittsburgh, for appellee.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

NIX, Justice.

The present controversy arises from a contested election in the May 20, 1975, Primary between two of five candidates seeking the Democratic nomination for the office of County Treasurer. The original vote indicated that Mr. Yoney, appellee, received a plurality of 158 votes over his nearest rival, Mr. Jones, appellant. This appeal results from the refusal of the Court of Common Pleas of Washington County to grant appellant's request that all of the ballot boxes in the county be impounded, opened and recanvassed.[1]

Before we can consider the merits of this appeal, we must address the questions raised by the Motion to Quash the appeal as untimely filed. To understand this issue, it is first necessary to set forth chronologically the events that preceded the filing of the instant appeal. As has been stated, the election was held on May 20, 1975. On June 6, 1975, the County Board provisionally certi-. fied the returns for the Democratic nominee for the office of County Treasurer, indicating that Mr. Yoney had a plurality of 158 votes over Mr. Jones, his nearest opponent. On June 4, 1975, two days before this certification, petitions were filed on behalf of Mr. Jones requesting the opening of 16 ballot boxes and the recounting of the ballots therein. Recount Boards were appointed and their reports of the recount of the 16 ballot boxes were

1. By earlier Orders, some of the boxes were opened and recounted. This request related to the remaining boxes in the county which had not been recanvassed.

filed on June 25, 1975.[2]   Subsequently, on June 30, 1975, counsel on behalf of Mr. Jones, filed a petition to open all of the ballot boxes within the county which had not been previously opened and in the alternative requested that 28 boxes, specifically referred to in their petition, be opened.   Yoney responded by filing preliminary objections.   On July 10, 1975, the court en banc entered a per curiam Opinion and Order sustaining the preliminary objections as to the request to open all of the remaining boxes throughout the county, but because of certain "special circumstances"[3] did consider the request pertaining

2.   As a result of this recount, Jones gained 37 votes.

3.   The "special circumstances" referred to in the court's opinion can best be understood from the following excerpt from the lower court's opinion:

"Ordinarily, therefore, we would be constrained to dismiss the instant petition as not timely filed under any of the applicable sections of the Code.   However, the circumstances surrounding the computation and canvassing of the returns of this year's primary were somethat unusual in certain respects.   It will be noted that because all 3 positions for the office of County Commissioner were on the ballot, our county commissioners could not sit as the return board and instead 3 judges of our court (Sweet, P. J., DiSalle and Gladden, JJ.) were designated to act as such board.   It appears that during the computation and canvassing, Judge Sweet, presumably acting as a member of the return board, was called upon by the clerks and election officers to make certain rulings and decisions with respect to the count.   He admittedly made these decisions on an *ad hoc* basis without consulting either of the other two judicial members of the return board and without reducing his decisions to writing or making any memorandum or notation thereof.   It was apparently during this process that the sealed general returns were corrected by and at the direction of Judge Sweet without the opening of the applicable box.

Section 1404(d)(1) clearly states that where the tally papers and the sealed general return sheet agree, the unsealed general return shall be forthwith corrected to conform thereto.   It goes on to say 'But in every other case the county board shall forthwith cause the ballot box of the district to be opened and the vote therein to be recounted in the presence of attorneys, watchers, and candidates interested.'   As noted, Section 1407(a) provides that any person aggrieved by any order or decision of any county board may appeal therefrom within 2 days after such order or decision shall have been made to the court of common pleas, whether such order or decision was reduced to writing or not.   In answer to this apparent bar, Mr. Jones says

to the 28 boxes.  On August 1, 1975, appellant filed a second petition requesting that all of the remaining ballot boxes be opened.  This petition was denied by an Order entered on August 4, 1975.  It is purportedly the Order of August 4, 1975, from which appellant has filed this appeal (September 3, 1975).

The basis for the Motion to Quash is that a Final Order on the request to open all remaining boxes was entered by the court en banc on July 10, 1975, and therefore the instant appeal was, in fact, filed 55 days after that Order had been entered.  Thus, the pivotal question in this dispute is when did the court enter a Final Order denying appellant's request that the remaining ballot boxes within the county be reopened and recounted.

The Pennsylvania Election Code, Act of June 3, 1937, P.L. 1333, art. I, § 101 et seq., as amended, 25 P.S. § 2601 et seq., reflects a clear intention of the Legislature to expeditiously dispose of objections and to provide for prompt certification of the vote.  The integrity of the election process requires immediate resolution of disputes that prevent certification.  This is particularly true in Primary Elections where the results must be fi-

that he was not aware that the correction or alteration of the sealed return sheets were being made.  However, he admits that he was present at all times during the computation and canvassing and he was therefore bound to know that these things were being done.  He cannot stand by and permit pertinent time limitations to pass with the excuse that he was not aware of the actions taken.  It is the duty of a candidate for public office, either by himself or through a representative, to be present at all times when matters important to him are being decided and to make himself aware of what those decisions are.

However, in this case it cannot reasonably be argued that the action of Judge Sweet in making the *ad hoc* decisions referred to was in any way the action of the county return board, as constituted, especially in view of the fact that no other members of the board were consulted.  It follows, then, that there were no orders or decisions made by the county return board, as such, from which Mr. Jones could have appealed under 1407(a).  On this very narrow and limited basis, therefore, we think it appropriate that the 28 boxes referred to in the petition be opened."

nalized in sufficient time to enable the election machinery to be readied for the General Election. Recognizing these considerations, this Court has held that compliance with the statutorily imposed time limits is especially important in this area. *In re Recount of Ballots Cast in General Election*, 457 Pa. 279, 325 A.2d 303 (1974); *Turtzo v. Boyer*, 370 Pa. 526, 88 A.2d 884 (1952).[4]

In the instant case, the first petition requesting the recanvass of the 16 votes under the provisions of section 1701 of the Election Code, *supra*, 25 P.S. § 3261, was concededly in accordance with the statutory requirements. No objection has been raised with reference to that request. In response to the petition filed on June 30, 1975, Mr. Yoney filed preliminary objections asserting, *inter alia*, that the request was untimely. The court en banc determined that the petition was filed pursuant to section 1407(a) of the Election Code, *supra*, 25 P.S. § 3157(a), and determined that appellant had failed to comply with the time provisions provided for within that section. While it is true the Order of July 10th did postpone a final decision with reference to the opening of the 28 boxes[5] specifically referred to within the petition, it

---

4. In *Turtzo v. Boyer*, 370 Pa. 526, 531, 88 A.2d 884, 886 (1952), this Court observed:
   "It is because the lawmakers of the State were aware of the inertia inherent in an unestimated percentage of the population, and the great harm which can be visited upon others because of that inertia, that it categorically established time limits for the various procedures required in the operation of the Election Code. Unless time limits were set within which to challenge the results of elections, government would perenially sit on a shaky foundation, and the citizenry would never be certain of the identity of the office-holder chosen to direct and operate the complex activities of the State, County and Municipality. Civilization must protect itself from the sluggard, as well as from the evildoer. The lazy railroad watchman, who fails to lower a safety gate in time, can inflict as much harm on innocent passengers as the bandit who holds up the train."

5. The court allowed Mr. Yoney until July 14, 1975 to respond to the request pertaining to the 28 boxes. Subsequently, after hearing on July 21st, the court entered an Order requiring 24 of the 28 boxes to be reopened and recanvassed. As a result of that recount, Jones gained 34 votes and reduced Yoney's plurality to 87 votes.

is nevertheless clear, in our judgment, that the Order provided a final determination as to the request to open all remaining boxes. The order of July 10th provided:

"AND NOW, this 10th day of July, 1975, the preliminary objections are dismissed insofar as they apply to the averments of paragraph 2 of the petition, as amended. *The preliminary objections to that part of the petition which calls for the opening of all of the boxes throughout the county are sustained.* Since we are here considering preliminary objections, we must, perforce, take the allegations regarding the alterations of the sealed general return sheets in the 28 districts as true. However, we will afford to Mr. Yoney until Monday, July 14th, 4:30 p.m., an opportunity to file such answer to the averments of paragraph 2 of the petition, as amended, as he deems appropriate. If no answer is filed by that time, we will order the opening of the 28 boxes at the expense of the county and appoint recount boards for such purpose." (Emphasis added).

The italicized portion of this Order leaves no doubt that the court was making a final determination as to the dismissal of the request to open all remaining boxes throughout the county. This intention was further clearly announced in the per curiam Opinion which accompanied that Order.

"With regard to the request in the petition that we open all of the ballot boxes for all of the districts in the county, we find absolutely no authority for our doing so under the circumstances."

Appellant seized upon the language of the Order of August 4, 1975, to suggest that final resolution of the issue had been postponed until that time.[6] We believe

6. The portion of the Order of August 4th relied upon by appellee provides:
   ". . . the Court having before it the petition of Frank Jones, Jr., to open all of the remaining ballot boxes [this refer-

that it is clear that the court, in its August 4th Order was merely restating and reaffirming the decision that it had reached on July 10th and that the appellant cannot be permitted to use the Order of August 4th as a vehicle to extend the 30-day period for appeal.[7] We therefore conclude that any objections to the court en banc's holding that the petition of June 30th was filed pursuant to section 1407(a) or the consideration of any special circumstances that may have justified filing out of time, see *Koch Election Contest Case*, 351 Pa. 544, 41 A.2d 657 (1945) (where we recognize the power of the Court of Common Pleas to extend statutory time limits where the delay has been satisfactorily explained), should have been presented in a timely appeal from the Order of July 10th.[8] This not having been done, we have no recourse but to grant the Motion to Quash and dismiss the appeal.

It is so ordered.

ROBERTS, J., files a dissenting Opinion.

ence is to the second petition to open all ballot boxes filed August 1, 1975] used in the May, 1975 Primary Election, and having carefully considered the same; it appearing that no issues of fact or other matters are raised in said petition which have not already been heard and considered by the Court in its previous hearings and opinion in this matter, . . ."

The fact that appellant deemed it necessary to file a second petition to open tends to establish that he, in fact, had not misinterpreted the effect of the Order of July 10th. Had he been, as he now claims, under the impression that the court was still considering his request as to the opening of the remaining boxes, there would have been absolutely no reason for the filing of a new petition for this purpose. If, as he contends, he gained additional information to support his request as a result of the recanvassing of the 24 boxes, this information could have been incorporated in the original petition by amendment or a supplemental petition.

7. The appeal must be filed within 30 days of the entry of the Order from which the appeal is taken. Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, No. 223, art. V, § 502(a) & (b); 17 P.S. § 211.502(a) & (b).

8. The line of cases holding that orders sustaining preliminary objections in the nature of a demurrer without dismissing the complaint or entering judgment or otherwise terminating the action between the parties are interlocutory are not here applicable.

160

MANDERINO, J., dissents for the reason that this appeal was filed within 30 days of the trial court's Order of August 4, 1975 and thus should not be quashed.

JONES, C. J., took no part in the consideration or decision of this case.

ROBERTS, Justice (dissenting).

I dissent. On this record, I would reach the merits of this appeal.

Although the court on July 10 denied petitioner relief on that part of his petition which requested a recount of all ballot boxes, it retained jurisdiction over the remainder of the petition until July 21, when it granted partial relief. The limited recount ordered at that time revealed a substantial difference in vote counts and raised serious questions concerning the result of the election return.

The majority creates an undue hardship on the litigant and casts a cloud over this entire election. As the court en banc noted,* a single member of the return board followed highly questionable procedures and a significant conflict in vote counts had already been discovered. Because of these "unusual circumstances," petitioner should not be required to appeal the dismissal of part of his petition until the court made a final determination on the issue raised. As I stated in *Madigan Appeal,* 434 Pa.

Herman v. Harborcreek Township, 458 Pa. 202, 321 A.2d 653 (1974); Micklege et ux. v. Capozzi, 455 Pa. 551, 316 A.2d 887 (1974); Cherry v. Empire Mutual Insurance Co., 417 Pa. 7, 208 A.2d 470 (1965). The Decree of July 10th was a final Order disposing of the petition then before the court. While the court provided for a further consideration of the request pertaining to the 28 boxes it was clearly a definitive and final Order as to the request to open the remaining boxes. Thus, the Decree terminated the litigation as to this issue and was therefore appealable. Hudock et al. v. Donegal Mutual Insurance Co., 438 Pa. 272, 262 A.2d 668 (1970).

* See majority opinion, ante at 262, n. 3.

361, 369, 253 A.2d 271, 275–76 (1969) (dissenting opinion):

"I do not believe that this election should be decided on procedural technicalities that are of questionable validity. Appellant should at least be given the *opportunity* to show that he was actually the winner. Whether he will ultimately prevail is another question, but unless this conflict is fully aired, the [apparent winner] will remain under a cloud of nonentitlement."