In re AMBULATORY MEDICAL &
SURGICAL HEALTH CARE,
INC., Debtor.

Mark L. GLOSSER, Trustee for
Ambulatory Medical & Surgical
Health Care, Inc., Plaintiff,

v.

S & T BANK, formerly The Savings and
Trust Company of Pennsylvania; Frank
R. Santamaria, individually and as a
general partner of Mt. Pleasant Develop-
ment Group, a/k/a Mt. Pleasant Develop-
ment Group I and Linda Santamaria,
his wife; Frank V. Maida, individually
and as a general partner of Mt. Pleasant
Development Group, a/k/a Mt. Pleasant
Development Group I and Phyllis Mai-
da, his wife; James E. Nicolette, individ-
ually and as a general partner of Mt.
Pleasant Development Group, a/k/a Mt.
Pleasant Development Group I and Eva
Joy Nicollette, his wife; Mt. Pleasant
Development Group, a/k/a Mt. Pleasant
Development Group I, a Pennsylvania
general partnership, Defendants.

Bankruptcy No. 92–25328–JLC.
Adv. No. 95–2077–BM.

United States Bankruptcy Court,
W.D. Pennsylvania.

Oct. 5, 1995.

Mark L. Glosser, Stone, Glosser & Stone, Pittsburgh, PA, Trustee for Ambulatory Medical & Surgical Health Care, Inc.

James F. Grenen, O'Keefe, Grenen & Bir-sic, P.C., Pittsburgh, PA, for Defendant S & T Bank.

F. Scott Gray, Sable, Makoroff & Gusky, P.C., Pittsburgh, PA, for Defendants Frank R. Santamaria, James E. Nicolette and Eva Joy Nicolette, his wife.

Samuel R. Grego, Springer, Bush & Perry, P.C., Pittsburgh, PA, for Defendant Linda Santamaria.

Donald P. Tarosky, Ceraso & Tarosky, Greensburg, PA, for Defendants Frank V. Maida and Phyllis Maida, his wife.

Kathleen Robb–Singer, Office of United States Trustee, Pittsburgh, PA.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Defendant S & T Bank (hereinafter "S & T") has brought a motion to dismiss the complaint against it and all other defendants. The chapter 7 trustee, plaintiff herein, opposes the motion.

The chapter 7 trustee has brought a motion to reconsider a prior order of court and seeks leave to amend certain counts of its complaint to add an additional cause of action against defendants. S & T opposes the motion.

S & T's motion will be denied and the trustee's motion will be granted for reasons set forth below.

### –FACTS–

Debtor was in the business of providing outpatient surgical and health care.

On December 6, 1992, debtor filed a voluntary chapter 7 petition. Boyce Technology Associates (hereinafter "Boyce") was listed on the schedules as a general unsecured creditor holding a disputed claim in the amount of $1,880,000.00.

On December 10, 1992, Carl P. Izzo was appointed by the United States Trustee as interim trustee pursuant to § 701 of the Bankruptcy Code. Notice of his appointment provided that:

Unless another trustee is elected at the meeting of creditors convened pursuant to § 341(a), the Interim Trustee shall serve as Trustee.

On February 16, 1993, Boyce filed a claim in the amount of $1,880,000.00 and advised the United States trustee of its intention to seek election of a person other than the interim trustee as permanent trustee.

The United States trustee conducted an election for permanent trustee on February 19, 1993. Various creditors present at the meeting voted in favor of the appointment of Mark L. Glosser as permanent trustee.

The United States trustee filed a report with the court shortly thereafter detailing the above events and requesting a determination whether Boyce was eligible to vote for a permanent trustee pursuant to § 702 of the Bankruptcy Code. On February 26, 1993, an order was entered directing any party objecting to the proof of claim by Boyce to do so with specificity within a prescribed period of time. If no objection was timely filed, Boyce would be allowed to vote for a permanent trustee without any determination at that time as to the allowability of its claim. No objection was filed to the proof of claim by Boyce.

On March 12, 1993, Boyce brought a motion requesting a determination that it was eligible to vote for a permanent trustee; that its vote would be included in the final tally; and that election of Mark L. Glosser as permanent trustee was confirmed.

On March 18, 1993, an order was issued granting the relief requested by Boyce and directing the United States trustee to certify Mark L. Glosser as permanent trustee. The United States trustee issued a report on March 26, 1993, stating that Mark L. Glosser had been elected as chapter 7 trustee.

On February 17, 1995, less than two years after his appointment as trustee but more than two years after the filing of the chapter 7 petition, the trustee commenced the above adversary action against the above-named defendants.

On June 14, 1995, the trustee brought a motion to correct a typographical error or to amend the complaint. According to the trustee, various references in the complaint to 39 P.S. § 366 were in error, as no such provision existed. He sought leave to cor-

rect portions of Count II and VIII of the complaint by replacing references therein to 39 P.S. § 366 with 39 P.S. § 356 and to add 39 P.S. § 357 as a basis for the causes of action stated therein.

On July 18, 1995, S & T brought a motion to dismiss the complaint either in whole or in part. The chapter 7 trustee opposes the motion.

A hearing was held on the trustee's motion on July 19, 1995. When the trustee failed to appear at the hearing on his own motion, we issued an order that same day authorizing the trustee to replace all references to 39 P.S. § 366 with 39 P.S. § 356 but denying his request to insert references to 39 P.S. § 357 as well.

The trustee brought a motion on July 23, 1995, requesting reconsideration of the order of July 19, 1995. S & T opposes the motion.

On August 4, 1994, defendant Linda Santamaria joined S & T's motion to dismiss the complaint. None of the other defendants has joined in the motion.

A hearing was held on S & T's motion to dismiss, on the trustee's motion for reconsideration, and on the objections to the motions.

–I–

**THE COMPLAINT**

The trustee alleges as follows in the complaint.

Mount Pleasant Development Group (hereinafter "MPDG") is a general partnership.

Defendants Frank Santamaria, Frank Maida, and James Nicolette are general partners of MPDG. They also are shareholders, officers, directors, and insiders of debtor. Defendants Linda Santamaria, Phyllis Maida, and Eve Nicolette, respectively, are their wives and also are insiders of the debtor. S & T is a bank.

On September 29, 1986, James and Eve Nicolette conveyed undeveloped real property to MPDG for the sum of $218,000.00. MPDG was to erect an office building on the site which it was to lease to debtor.

Between September of 1986 and November of 1987, debtor, MPDG, and the individual defendants borrowed funds from S & T to finance construction of the building, to purchase equipment, and to provide working capital for MPDG and for debtor. Three notes were executed in connection with the indebtedness arising therefrom. Not all of these defendants were liable to S & T on each of the three notes executed during that period.

On September 29, 1986, MPDG borrowed the sum of $1,903,000.00 from S & T and executed a note in favor of S & T in that amount. S & T was granted a mortgage against the above real property as security for the obligation. Debtor was not a party to the transaction; its assets were not pledged to secure payment of the debt. Payment of the obligation was guaranteed by the individual defendants.

On March 11, 1987, defendants Santamaria, Maida, and Nicolette borrowed the sum of $1,660,055.00 from S & T and executed a note in that amount in favor of S & T. Debtor was not a party to the transaction and did not execute any security agreement at that time. On April 15, 1987, however, debtor executed a security agreement granting S & T a security interest in debtor's contracts, accounts receivable, inventory, and equipment. S & T, the trustee avers, does not have a perfected security interest in debtor's leasehold improvements or fixtures at the office building.

On November 13, 1987, debtor and all of the individual defendants borrowed the sum of $600,000.00 from S & T and executed a note in its favor in that amount. Debtor also executed a security agreement at that time granting S & T a security interest in the same assets as were covered in the security agreement executed on April 15, 1987. No financing statement was filed in connection with this transaction.

As of December 30, 1991, the total balance due and owing on the above three notes was approximately $3,900,000.00. A balance of $1,750,000.00 was owed on the note executed on September 29, 1986. A balance of $1,556,871.00 was owed on the note executed on March 11, 1987. A balance of $592,308.00 was owed on the note executed on November 11, 1987.

On December 30, 1991, debtor and MPDG executed a refinancing agreement and note

in favor of S & T in the amount of $3,900,-000.00. The indebtedness was secured by a second mortgage against MPDG's real property in the amount of $3,900,000.00 and by a security interest in debtor's and MPDG's inventory, equipment, accounts receivable, contract rights, chattel paper, and general intangibles. S & T advanced no new funds in connection with this agreement.

Significant changes occurred in debtor's financial condition as a result of the refinancing agreement of December 30, 1991. Debtor became liable for MPDG's indebtedness under the note of September 29, 1986 and became liable for individual defendants' indebtedness under the note of March 11, 1987. Prior to December 30, 1991, none of debtor's assets provided security for these debts.

On October 17, 1992, defendants MPDG, Santamaria, Maida, and Nicolette executed an asset purchase agreement whereby all of debtor's and MPDG's assets were sold to a third party for the sum of $3,200,000.00. If the purchaser's pre-tax income exceeded specified amounts in 1994, 1995, and 1996, defendants Santamaria, Maida, and Nicolette were to receive additional amounts.

The net proceeds realized from the sale were applied to the indebtedness owed to S & T under the note of December 30, 1991. The balance still due and owing was $694,-361.26. S & T has collected debtor's accounts receivable and applied the funds to the outstanding balance due under the note of December 30, 1991. The outstanding indebtedness was $576,469.34 as of the date of the filing of debtor's bankruptcy petition and was $494,128.10 as of August 18, 1993.

Count I of the complaint is against S & T. The trustee seeks to avoid pursuant to 11 U.S.C. § 547(b) all payments made to S & T within one year of the bankruptcy filing. As was noted, it is not alleged that S & T was an insider of debtor. The trustee relies upon the *DePrizio* doctrine to recover pursuant to 11 U.S.C. § 550(a) all payments and transfers made to S & T more than ninety days but less than one year prior to the filing of the chapter 7 petition.

Count II of the complaint also is against S & T and alleges that certain specified transfers and payments debtor made to S & T were fraudulent pursuant to 11 U.S.C. § 548.

Count III of the complaint is brought against S & T. According to the trustee, the transfers identified in Count II also are fraudulent transfers as defined in 39 P.S. §§ 354, 355, and 356.

Count IV of the complaint is against defendants Frank Santamaria, Frank Maida, and James Nicolette, both individually and as general partners of MPDG, against their wives, and against MPDG. The trustee seeks to avoid pursuant to 11 U.S.C. § 547(b) and to recover pursuant to 11 U.S.C. § 550(a) all transfers made to S & T on their behalf within one year of the bankruptcy filing.

Count V is against the defendants named in Count IV and is based on the doctrine of contribution. According to the trustee, these defendants are jointly and severally liable in whole or in part with debtor on the above obligations.

Count VI is against Frank Santamaria, Frank Maida, and James Nicolette both individually and as general partners of MPDG. According to the trustee, they are jointly and severally liable for any and all of MPDG's liability to the trustee in their capacity as its general partners.

Count VII is against the same defendants as in Count IV and is based on 11 U.S.C. § 548. The trustee asserts that the transfers described in Count II of the complaint were fraudulent because debtor did not receive reasonable equivalent value for the transfers whereas the defendants benefitted therefrom.

Count VIII is against the same defendants as in Count IV. According to the trustee, the transfers described in Count II of the complaint constitute fraudulent transfers under 39 P.S. §§ 354, 355, and 356.

Count IX of the complaint is against all defendants. According to the trustee, any liens and claims by any of the defendants against debtor's assets are subject to the trustee's "strong-arm powers" as set forth at 11 U.S.C. § 544.

## DISCUSSION

### –I–

### S & T'S MOTION TO DISMISS

S & T's motion to dismiss is brought in five separate "counts". We shall consider them *seriatim*.

### A) *COUNT I.*

■ The above adversary action was commenced on February 17, 1995, more than two years after the appointment of the interim chapter 7 trustee on December 10, 1992, but less than two years after the appointment of the permanent chapter 7 trustee in March of 1993.

S & T asserts that Counts I, II, IV, V, VI, VII, and IX of the complaint are based upon §§ 544, 547, or 548 of the Bankruptcy Code and therefore are barred as untimely by 11 U.S.C. § 546(a).

As a preliminary matter, we note that Counts I, II, and IX are the only counts of the complaint which are based upon §§ 544, 547, or 548 and in which S & T is named as a defendant. S & T is not named as a defendant in Counts IV, V, VI, VII, or VIII. In addition, all of the remaining defendants also are named along with S & T in Count IX. With the exception of defendant Linda Santamaria, who joined in S & T's motion, none of the other defendants has requested dismissal. It is questionable whether S & T has standing to seek dismissal on their behalf when they have not sought it for themselves. We need not, however, address this issue because S & T's assertion that the above counts of the complaint are barred as untimely by § 546(a) of the Code is without merit.

The version of 11 U.S.C. § 546(a) in effect when debtor filed its chapter 7 petition provides in pertinent part as follows:

(a) An action or proceeding under section 544, ... 547, [or] 548 ... of this title may not be commenced after the earlier of—

(1) two years after the appointment of a trustee under section 702 ... [or] 1104 ... of this title; or

(2) the time the case is closed or dismissed.

11 U.S.C. § 546.

As support for its position, S & T relies upon the recent decision in *In re Dryland Marina, Inc.,* 180 B.R. 487 (Bankr. W.D.Mich.1995).

The facts of our case are distinguishable in a significant respect from the facts in *Dryland Marina.* Although the chapter 7 trustee was appointed in both cases pursuant to 11 U.S.C. § 702, the predecessors to the § 702 trustee were appointed pursuant to different sections of the Bankruptcy Code. The predecessor to the § 702 trustee in *Dryland Marina* was a chapter 11 trustee who was appointed pursuant to 11 U.S.C. § 1104. The predecessor to the § 702 trustee in the instant case was an interim trustee who was appointed pursuant to 11 U.S.C. § 701. The above version of § 546(a) expressly provides that the statute of limitation expires two years after appointment of a chapter 11 trustee pursuant to 11 U.S.C. § 1104. It contains no such express provision for an interim trustee appointed pursuant to 11 U.S.C. § 701.

We agree with the majority view that the two-year time period for bringing an action pursuant to §§ 544, 547, or 548 of the Code does not begin to run with the appointment of a chapter 7 trustee who is appointed on an interim basis pursuant to 11 U.S.C. § 701 and who then is replaced by a permanent trustee appointed pursuant to 11 U.S.C. § 702. See *In re Kendall Meat Imports, Inc.,* 176 B.R. 80, 81 (Bankr.S.D.Fla.1994).

■ The two-year statute of limitation does not begin to run while the interim trustee who is appointed pursuant to § 701 remains in office when there is a dispute which results in the election of another trustee pursuant to 11 U.S.C. § 702. It begins to run in such situations only when the bankruptcy court issues an order resolving the dispute by either confirming or rejecting the election of the successor trustee. *Id.; also In re Metro Shippers, Inc.,* 95 B.R. 366, 368–69 (Bankr.E.D.Pa.1989).

It should be noted that the above version of § 546(a) was amended as of October 22, 1995 to provide in relevant part as follows:

(a) An action or proceeding under section 544, ... 547, [or] 548 ... of this title may not be commenced after the earlier of—

(1) the later of—

(A) 2 years after the entry of the order for relief; or

(B) 1 year after the appointment or election of the first trustee under section 702, ... [or] 1104 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or

(2) the time the case is closed or dismissed.

11 U.S.C. § 546.

Were this amended version applicable to the instant case, which it is not because the above bankruptcy case was commenced after October 22, 1994, all causes of action stated in the complaint that are based on §§ 544, 547, or 548 would be barred as untimely by § 546(a)(1)(A). The above adversary action was commenced more than two years after entry of the order for relief on December 6, 1992, as well more than one year after the appointment of the permanent trustee in March of 1993 pursuant to § 702.

S & T concedes that the amended version of § 546(a) does not apply to the instant case but relies instead upon the analysis in *Dryland Marina*, where the court nonetheless looked to the amended version of § 546(a) to ascertain the correct interpretation of the previous version. 180 B.R. at 489. While conceding that views of a subsequent Congress cannot override the intent of the enacting Congress, *Dryland Marina* held that the views of the former nonetheless are entitled to "significant weight" when the "precise intent of the enacting Congress is obscure." *Id.*

In our estimation, the prior version of § 546(a) is not ambiguous where an interim trustee who was appointed pursuant to § 701 is replaced by a permanent trustee who is appointed pursuant to § 702. The fact that the § 1104 trustee is the same person as the § 702 trustee in *Dryland Marina* is interesting but legally irrelevant. As we have noted, the two-year statute of limitation does not begin to run while the § 701 trustee is in place when there is an unresolved dispute concerning the election of a permanent trustee pursuant to § 702. Finding ambiguity in the prior version of § 546(a) on this point would require reading more into it than is provided for by its plain language. It makes no reference to an interim trustee who is appointed pursuant to § 701. *Expresso unius est exclusio alterius.* Accordingly, we need not look to the intention of the Congress that enacted the recent amendment to § 546(a) to ascertain the proper interpretation of the prior version.

## B) *COUNT II.*

Count II of the complaint asserts a cause of action against S & T pursuant to 39 P.S. §§ 354, 355, and 356, popularly known as the Fraudulent Conveyance Act. Count VIII asserts an identical cause of action against defendants Frank Santamaria, Frank Maida, and James Nicolette. S & T asserts that these counts of the complaint must be dismissed pursuant to 28 U.S.C. § 1334(c)(2). This contention is without merit.

Section 1334(c)(2) provides in pertinent part as follows:

Upon timely motion of party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been brought in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334.

A party seeking mandatory abstention pursuant to § 1334(c)(2) must show that:

(1) there has been a timely motion for abstention;

(2) the proceeding is based on State law;

(3) the proceeding is related to a case under title 11;

(4) the proceeding does not arise under title 11 or in a case under title 11;

(5) the proceeding could not have been brought in a federal court absent § 1334: and

(6) an action has been commenced in a state court of competent jurisdiction and can be adjudicated there in a timely manner.

*See In re Marcus Hook Development Park, Inc.,* 153 B.R. 693, 702 (Bankr.W.D.Pa.1993).

Not all of the above prerequisites are present in the instant case. In particular, the final prerequisite is absent. No action has been commenced in state court. As § 1334(c)(2) makes abundantly clear, we must abstain so that a state court of competent jurisdiction may adjudicate a controversy that presently is before it. Accordingly, Count II of S & T's motion to dismiss must be denied.

### C) *COUNT III.*

■ The complaint contains numerous references to a note executed on March 11, 1987 by defendants Frank Santamaria, Frank Maida, and James Nicolette.

In paragraph 16, for instance, the trustee alleges that they (not debtor) borrowed the sum of $1,660,055.00 from S & T and executed a demand note in connection therewith. Debtor, the trustee claims, was not a party to the transaction and executed no security agreement at that time.

In paragraph 18, the trustee alleges that the total balance due and owing on the three notes was approximately $3,900,000.00, including the sum of $1,556,871.00 still owed on the note executed on March 11, 1987.

In paragraph 22, the trustee alleges that, as a result of the refinancing note executed on December 30, 1991, by debtor and MPDG, debtor became liable for the first time for the amount due and owing on the note of March 11, 1987. Prior to that time, the trustee alleges, debtor was not liable under this note.

S & T seeks in Count III of its motion an order determining that the note of March 11, 1987, in fact was debtor's obligation and dismissing pursuant to FED.R.CIV.P. 12(b)(6) "those portions of the Trustee's Complaint based upon the Trustee's claim that the March 11, 1987, Revolving Credit Note was not executed individually by Frank V. Maida, Frank R. Santamaria and James E. Nicolette". In support of this requested relief, S & T has proffered a series of notarized affidavits wherein defendants Santamaria, Maida, and Nicolette state that they executed the note not as individuals but as officers of debtor. In addition, S & T also has proffered sworn affidavits by officers and employees of S & T who state that the loan was approved as a loan to debtor and that the loan funds were deposited into debtor's account.

■ The standard for deciding a Rule 12(b)(6) [1] motion, which applies to adversary actions pursuant to Federal Rule of Bankruptcy Procedure 7012, is relatively straightforward. We must take all of the factual allegations of the complaint as true, construe them in a light most favorable to plaintiff, and determine whether plaintiff might be entitled to relief under any reasonable reading of the complaint. *See Rogin v. Bensalem Township,* 616 F.2d 680, 685 (3d Cir.1980), *cert. denied,* 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981). Dismissal pursuant to Rule 12(b)(6) is warranted only when it is manifestly obvious that plaintiff cannot prove any set of facts which would entitle it to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

The relief S & T seeks in Count III of its motion to dismiss shall be denied.

S & T's request that we make a finding that the note of March 11, 1987, was executed on debtor's behalf and was not an obligation of defendants Frank Santamaria, Frank Maida, and James Nicolette as individuals violates the requirement that we treat all allegations of the complaint as true.

---

1. We suspect that S & T in fact is seeking judgment on the pleadings pursuant to FED.R.CIV.P. 12(c) rather than dismissal pursuant to 12(b)(6) for failure to state a claim upon which relief can be granted, as the pleadings in the above adversary action have closed. We shall, however, treat the motion as a 12(b)(6) motion as it and a Rule 12(c) motion are subject to the same standard. *See Constitution Bank v. DiMarco,* 815 F.Supp. 154, 156–57 (E.D.Pa.1993).

As we have indicated, the trustee alleges in the complaint that the obligation arising under this note was that of Frank Santamaria, Frank Maida, and James Nicolette and not of debtor.

■ Rule 12(b)(6) (as well as Rule 12(c)) provides that when matters outside the pleadings are presented and are not excluded by the court, the motion shall be treated as a motion for summary judgment pursuant to Rule 56. We decline to do so in this instance. A Rule 12(b)(6) or a Rule 12(c) motion may be treated as a summary judgment motion only if the court provides all parties of reasonable notice that fairly apprises the party against whom summary judgment is entered that the court intends to look beyond the pleadings. *See Mayer v. Wedgewood Neighborhood Coalition*, 707 F.2d 1020, 1021 (9th Cir.1983). No such notice was provided to the trustee. Given the impending trial date, there is not sufficient time for us to so fairly apprise trustee so that he may respond and then for us to decide the matter prior to the scheduled trial date.

### D) *COUNT IV.*

■ The trustee asserts in paragraph 15 of the complaint that the note executed on September 29, 1986 by MPDG was secured by a duly recorded first mortgage against MPDG's real property. According to the trustee, none of debtor's assets secured repayment of this debt.

S & T takes issue with this latter assertion. It insists that the above perfected mortgage attached to all of debtor's and MPDG's fixtures and leasehold improvements of the property. According to S & T, the complaint "fails to set forth a cause of action against S & T Bank for failure to perfect a security interest in all fixtures and/or leasehold improvements of Ambulatory".

It is not entirely clear what S & T here is attempting to accomplish. As far as we can determine, S & T seeks a determination that certain of debtor's assets did serve as security for the debt incurred on September 29, 1986 and seeks dismissal of "those portions

of the Trustee's Complaint against S & T Bank based upon the Trustee's allegation that S & T Bank failed to perfect a security interest in the Debtor's fixtures and/or leasehold improvements".

Count IV of S & T's motion to dismiss shall be denied for much the same reason as we rejected Count III of its motion.

S & T is asking us to treat as untrue the allegation made in paragraph 15 of the complaint that none of debtor's assets secured the debt MPDG incurred on September 29, 1986. So doing at this stage of the case would, we believe, contravene the principle that for now we must treat all of the allegations of the complaint as true. Determining whether the trustee or S & T is correct on this point should (and shall be) deferred until all of the evidence is presented at trial.

In addition, no claim for relief asserted in the complaint is based exclusively on this allegation. As we have indicated, the gravamen of the complaint concerns debtor's obligations arising out of the refinancing agreement of December 30, 1991 and its relationship to the various notes that it superseded. Even if we were to determine that the trustee is incorrect when he asserts that none of debtor's assets served as security for the obligation arising out of the note MPDG executed on September 29, 1986, it still does not necessarily follow that the trustee would be unable to prove any set of facts entitling him to relief.

### E) *COUNT V.*

■ S & T is the only named defendant not characterized in the complaint as an insider of debtor.

Count I of the complaint is brought against S & T pursuant to 11 U.S.C. § 547(b). Even though it is not characterized as an insider, the trustee seeks to recover from S & T pursuant to 11 U.S.C. § 550(a) all transfers debtor made to S & T within one year of the filing of the chapter 7 petition on December 6, 1992. Recovery is based on the *Deprizio* doctrine. *See In re Deprizio Construction Co.*, 874 F.2d 1186 (7th Cir.1989). Count IV is brought against the remaining defendants and also is based on 11 U.S.C. §§ 547(b) and

550(a). The trustee seeks to recover from them as insiders of debtor all transfers debtor made to S & T on their behalf within one year prior to the filing of the chapter 7 petition.

The version of § 550 of the Bankruptcy Code in effect when the above bankruptcy case was filed provides in relevant part as follows:

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, ..., 547, [or] 548.... of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

(2) any immediate or mediate transferee of such initial transferee....

11 U.S.C. § 550.

Subsequent to the filing of the chapter 7 petition in this bankruptcy case, Congress amended § 550 of the Code by adding the following new provision:

(c) If a transfer made between 90 days and one year before the filing of the petition—

(1) is avoided under section 547(b) of this title; and

(2) was made for the benefit of a creditor that at the time of such transfer was an insider;

the trustee may not recover under subsection (a) from a transferee that is not an insider.

11 U.S.C. § 550. The amendment left the above language of subsection (a) unchanged and was in effect when the above adversary action was commenced.

If *Deprizio* applies to this adversary action, as the trustee claims, then the trustee has a claim against S & T in Count I upon which relief may be granted. *Deprizio* held that transfers a debtor makes to a non-insider creditor more than ninety days but less than one year prior to the filing of the bankruptcy petition may be recovered from the non-insider creditor pursuant to § 550(a), if the transfers are for the benefit of an insider creditor. Under the amended version of § 550, the trustee may not recover such transfers from S & T.

It is clear that the above amendment of § 550, part of the Bankruptcy Reform Act of 1994, does not apply to the above adversary action. The pre-amendment version applies. *See In re Blevins Electric, Inc.*, 185 B.R. 250 (Bankr.E.D.Tenn.1995); *also In re Air Forwarding Systems, Inc.*, 176 B.R. 638 (Bankr. N.D.Fla.1995).

S & T concedes this last point but insists that recovery from it cannot be had even under the pre-amendment version of § 550(a). The 1994 amendment, S & T insists, did not change the meaning of § 550(a); it merely clarified it. As support for its position, S & T relies upon the following statement from the legislative history of the amendment:

... Several recent court decisions have allowed trustees to recapture payments made to non-insider creditors a full year prior to the bankruptcy filing, if an insider benefits from the transfer in some way. See *Levit v. Ingersoll Rand Financial Corp. (In re V.N. Deprizio Construction Co.)*, 874 F.2d 1186 (7th Cir.1889); *Ray v. City Bank & Trust Co. (In re C–L Cartage Co.)*, 899 F.2d 1490 (6th Cir.1990); *Manufacturers Hanover Leasing Corp. v. Lowrey (In re Robinson Brothers Drilling)*, 892 F.2d 850 (10th Cir.1989).... This section overrules the *Deprizio* line of cases and clarifies that non-insider transferees should not be subject to the preference provisions of the Bankruptcy Code beyond the 90–day statutory period.

H.R.Rep. No. 103–835, 103rd Cong., 2nd Sess. 19020 (October 4, 1994), U.S.Code Cong. & Admin.News 1994 at 3340.

The trustee concedes that he cannot recover from S & T under the amended version of § 550 and concedes that it overrules *Deprizio.* He denies, however, that the 1994 amendment merely clarified the prior law and insists that it instead changed it.

The issue that must be resolved here is whether the 1994 amendment of § 550 of the Bankruptcy Code changed the meaning of the pre-amendment version of § 550(a) or

merely clarified what it means. If it is a clarification rather than a change in its meaning, then perhaps the trustee cannot recover from S & T in Count I of the complaint.

We note before attempting to resolve this issue that dismissal of Count IV of the complaint does not follow even if S & T prevails on this issue. Recovery from the defendants named in Count IV does not depend on the *Deprizio* doctrine. The trustee seeks to recover in Count IV all transfers debtor made to S & T within one year of the filing of debtor's bankruptcy petition based upon their alleged status as insiders of debtor.

The United States Court of Appeals for the Third Circuit has not decided whether *Deprizio* is the law in this circuit as it pertains to the pre-amendment version of § 550(a). However, every federal court of appeals that has decided the issue has adopted *Deprizio*. *See In re Wesley Industries, Inc.*, 30 F.3d 1438 (11th Cir.1994); *In re Sufolla, Inc.*, 2 F.3d 977 (9th Cir.1993); *Matter of Southmark Corp.*, 993 F.2d 117 (5th Cir.1993); *In re C–L Cartage Co., Inc.*, 899 F.2d 1490 (6th Cir.1990); *In re Robinson Brothers Drilling, Inc.*, 892 F.2d 850 (10th Cir.1989). The courts that have adopted *Deprizio* have relied upon what they regarded as the "unambiguous language" of the pre-amendment version of § 550(a). *See, e.g., In re C–L Cartage*, 899 F.2d at 1494.[2]

 The starting point when construing a statute is the language of the statute. *See American Tobacco Co. v. Patterson*, 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982). It is presumed that the legislative purpose is expressed by the ordinary meaning of the words used. *See Richards v. U.S.*, 369 U.S. 1, 9, 82 S.Ct. 585, 591, 7 L.Ed.2d 492 (1962).

In light of this unanimity among courts of appeals and their conviction that *Deprizio* is

supported by the clear language of the pre-amendment version of § 550, it is questionable whether we even may consider the legislative history of § 550, including that for the 1994 amendment thereto.

The legislative history of the amended version of § 550 does not persuade us that the amendment merely "clarified" rather than "changed" the meaning of the pre-amendment version. Given the clear and unambiguous language of the version of § 550(a) in effect at that time, we are convinced that *Deprizio* was correctly decided. The facts in *Deprizio* fit well within the confines of the Code section. Our reservation related solely to the collateral complexities and/or collateral inconsistencies.

Congress, we believe, **changed** the meaning of § 550 because the clear and unambiguous language it employed when enacting § 550(a) inexorably led to undesirable results and outcomes that Congress had not contemplated. For instance, Congress undoubtedly had not intended that a perfected secured creditor who loaned funds to a debtor in good faith would, given literal language of § 550(a), have to disgorge payments it received when § 547(b) was satisfied and those payments were for the benefit of an insider creditor of the debtor.

Amendment of § 550 prevented such unintended and undesirable incidents from occurring in future cases by **changing** the law so that *Deprizio* no longer was a correct statement of the law.

–II–

### TRUSTEE'S MOTION FOR RECONSIDERATION

As was indicated, the present trustee was appointed as permanent trustee in March of 1993.

Count III of the trustee's original complaint stated claims against S & T under the

---

**2.** The only disagreement has occurred at the level of the district and bankruptcy courts. For instance, we rejected *Deprizio* in *In re Performance Communications, Inc.*, 126 B.R. 473 (Bankr.W.D.Pa.1991) but were reversed by the district court in an unpublished opinion.

Before the circuit could decide the issue the parties resolved their differences. Curiously, the

settlement plaintiff accepted was a small fraction of the sum mentioned in plaintiff's prayer for relief.

Another member of this court recently adopted *Deprizio*. *See In re Arthur Hazen & Co., Inc.*, 184 B.R. 233 (Bankr.W.D.Pa.1995).

Fraudulent Conveyance Act and was based on 39 P.S. §§ 354, 355, and 366. We issued an order on July 19, 1995 authorizing the chapter 7 trustee to replace all references to 39 P.S. § 366 with 39 P.S. § 356 but denied his request to add references to 39 P.S. § 357. The trustee brought a motion on July 24, 1995 requesting reconsideration of that portion of the order of July 19, 1995, denying his request to add references to 39 P.S. § 357. He insists that defendants will not be unduly prejudiced if he adds references to 39 P.S. § 357 as trial still is several months in the future.

S & T objects to the trustee's motion for two reasons. It first objects that 39 P.S. § 357 states a new cause of action and insists that FED.R.CIV.P. 15 provides no basis for allowing amendment of a complaint to add a new cause of action after a responsive pleading to the complaint is filed. It further objects that adding the new cause of action is barred by the applicable statute of limitation.

We shall address these contentions *seriatim.*

### A) *NEW CAUSE OF ACTION.*

■ Either leave of court or written consent of the adverse party is required to amend a pleading once there has been a responsive pleading thereto. Such leave, however, "shall be freely given when justice so requires". FED.R.CIV.P. 15(a).

The trustee in effect seeks to assert a new theory of recovery or cause of action by adding references to 39 P.S. § 357, which provides as follows:

> Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors.

39 P.S. § 357 (Purdon's 1954). It is based upon intentional fraud whereas 39 P.S. §§ 354, 355, and 356 are based upon constructive or implied fraud.

■ The mere fact that one seeks to amend a complaint by adding a new cause of action is not sufficient reason for disallowing amendment. *See Foman v. Davis,* 371 U.S.

178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *also DCD Programs, Ltd. v. Leighton,* 833 F.2d 183, 186 (9th Cir.1987). Leave to amend should·be granted absent circumstances such as undue delay, bad faith, dilatory motive, undue prejudice to the adverse party, or where amendment would be an exercise in futility. *See Foman,* 371 U.S. at 182, 83 S.Ct. at 230. Although it is not necessarily fatal to a request to amend a complaint, addition of a new cause of action may be significant to the extent that it relates to the above considerations. For instance, it is significant if the nature of the litigation would be greatly altered and defendants would have to pursue an entirely new and different defense at the eleventh hour. *See Morongo Band of Mission Indians v. Rose,* 893 F.2d 1074, 1079 (9th Cir.1990).

None of the above reasons for refusing to allow amendment of a complaint to add a new cause of action applies to the instant case. We do not believe that the trustee has delayed unduly, has acted in bad faith, or is seeking to amend for dilatory reasons. Permitting the trustee to amend will not unduly prejudice defendants. Although the new cause of action is predicated upon actual as contrasted with constructive fraud, it is not so drastically different that defendants will have to engage in substantial additional discovery or will have to drastically revise their defense strategies at the last minute to counter this new theory of recovery.

### B) *STATUTE OF LIMITATIONS.*

■ If amendment would be futile, leave to amend may (and should) be denied. Amendment is futile if it would not cure a deficiency in the original complaint or if the complaint as amended would not withstand a renewed motion to dismiss. *See Massarsky v. General Motors Corp.,* 706 F.2d 111, 125 (3d Cir.), *cert. denied,* 464 U.S. 937, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983). Amending a complaint to state a cause of action that is barred by an applicable statute of limitation is an example of such futility. *See Jablonski v. Pan American World Airways, Inc.,* 863 F.2d 289, 292 (3d Cir.1988).

The trustee's power to avoid transfers of an interest of the debtor in property that an unsecured creditor could avoid under the Fraudulent Conveyance Act is provided by § 544(b) of the Bankruptcy Code, which provides as follows:

> (b) The trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is avoidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

11 U.S.C. § 544.

The trustee stands in the shoes of debtor's unsecured creditors. *See Moody v. Security Pacific Business Credit, Inc.,* 127 B.R. 958, 989 n. 6 (W.D.Pa.1991), aff'd, 971 F.2d 1056 (3d Cir.1992). As long as the applicable statute of limitation has not expired prior to the filing of the bankruptcy petition, the trustee may bring an avoidance action under the powers bestowed upon him by § 544(b) within the time constraints imposed by § 546(a) of the Bankruptcy Code. *See In re Sverica Acquisition Corp, Inc.,* 179 B.R. 457, 466 (Bankr.E.D.Pa.1995); *In re Topcor, Inc.,* 132 B.R. 119, 123–24 (Bankr. N.D.Tex.1991) also 4 Collier on Bankruptcy (15th ed. 1995) ¶ 544.03[2] at 544–22 to 544–23.

The statute of limitation for an action brought under the Fraudulent Conveyance Act is two years. *See In re Sverica Acquisition,* 179 B.R. at 467–70; *also In re Glenn,* 108 B.R. 70, 73 (Bankr.W.D.Pa.1989). It begins to run from the date of the fraudulent conveyance complained of, unless such fraud has been actively concealed by the wrongdoer (in which case it is tolled). *See Turtzo v. Boyer,* 370 Pa. 526, 88 A.2d 884, 885 (1952).

The statute of limitation began to run in the instant case no earlier than December 30, 1991, when debtor executed the refinancing agreement and assumed liability for the obligations to S & T under the previous three notes of September 29, 1986, March 11, 1987, and November 13, 1987, respectively. It even may have been tolled until the filing of the bankruptcy petition on December 6, 1992, as debtor was under the adverse domination of some of the above defendants. *See In re Sverica Acquisition,* 179 B.R. at 470. In any event, the statute of limitation undoubtedly had not expired prior to the filing of debtor's chapter 7 petition, which occurred less than one year after the execution of the refinancing agreement. Accordingly, the trustee may bring an avoidance action pursuant to 39 P.S. § 357 within two years of his appointment in March of 1993 as permanent trustee pursuant to § 702 of the Bankruptcy Code. *See* 11 U.S.C. § 546(a).

Although the original complaint was filed on February 17, 1995, less than two years after the trustee's appointment pursuant to § 702, he did not request leave to amend the complaint to add references to 39 P.S. § 357 until June 14, 1995, more than two years after his appointment as permanent chapter 7 trustee. It does not follow from this, however, that the cause of action based on 39 P.S. § 357 is time-barred.

FED.R.CIV.P. 15 provides in relevant part as follows:

> **(c) Relation Back of Amendments.** An amendment of a pleading relates back to the date of the original pleading when....
>
> > (2) the claim or defense in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading....

The cause of action asserted by 39 P.S. § 357 arises out of the same conduct, transaction, or occurrence as do the other substantive causes of action set forth in the original pleading filed on February 17, 1995. Accordingly, it "relates back" to the date of the original complaint and therefore is not time-barred.

An appropriate order shall be issued.